## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| WILLIAM BROKAW PRICE, SHARON PRICE, and WINDFALL PROPERTIES, LLC, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 19-1162 ) |
| CARRI SCHARF TRUCKING, INC., an Illinois Corporation, and JOSEPH A. SCHARF, and CARRI SCHARF MATERIALS COMPANY, an Illinois Corporation | ) ) ) ) ) ) ) |
| Defendants. | ) |

### ORDER AND OPINION

This matter is now before the Court on Defendants' Motion to Dismiss Counts IV and V of Plaintiffs' Second Amended Complaint and Motion to Strike. ECF No. 88. For the reasons stated below, Defendants' Motions to Dismiss and Strike are GRANTED.

### BACKGROUND

This case involves a land dispute that stems from a Contract for the Sale of Sand, Gravel, and Topsoil ("Contract") that Brokaw's parents and CST entered into on or about January 7, 1997.[1] The Contract gave CST certain rights to mine and remove materials on what has been described as the "East Portion of the Farm Tract" or the "Mining Tract." Brokaw's parents jointly owned certain real property, inclusive of both "East" and "West Portions of the Farm Tract." Brokaw's sister is the Trustee of the William Brokaw Price Trust and of the Barbara Scott Price Trust (referred to collectively as "Trusts"). On May 31, 2018, in her capacity as Trustee of the Trusts,

---

[1] The facts in the Background section are derived from Plaintiffs' Second Amended Complaint. ECF No. 80.

1

Price's sister conveyed the "West Portion of the Farm Tract" to Price, and the "East Portion of the Farm Tract" or the "Mining Tract" remained the property of the Trusts. On April 30, 2019, Price's sister assigned all claims involving the "Farm Tract" to Price. On September 27, 2019, Price's sister conveyed the "Mining Tract" to Plaintiff Windfall Properties, LLC. Because the Court recounted in detail the background of this case in its previous Orders addressing Defendants' earlier motions to dismiss, the Court will incorporate the remaining alleged facts in this Opinion.

On May 13, 2019, Plaintiff William Brokaw Price ("Price") filed a Complaint. ECF No. 1. On June 11, 2019, Defendants Carri Scharf Trucking, Inc ("CST") and Joseph A. Scharf ("Scharf") filed a Motion to Dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). ECF No. 6. On August 20, 2019, the Court heard oral arguments on the matter, denied Defendants' Motion to Dismiss, and ordered Plaintiff to amend his Complaint. Text Order 8/20/19. On August 27, 2019, Plaintiff filed an Amended Complaint. ECF No. 18. On September 10, 2019, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) or 12(e). ECF No. 19. On October 1, 2019, the Court denied Defendants' Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 21. The parties engaged in discovery over the next several months. On August 11, 2020, a Second Amended Complaint was filed, which added Sharon Price ("Sharon") and Windfall Properties, LLC ("Windfall") as additional Plaintiffs and Carri Scharf Materials Company ("CSM") as a Defendant. ECF No. 80. Sharon is Price's wife and Windfall is a company they own. *Id.* at ¶ ¶ 2, 4. Scharf is the president of CSM. *Id.* at ¶ 13, On September 4, 2020, Defendants filed a Motion to Dismiss Plaintiffs' Second Amended Complaint under Rule 12(b)(6) and a Motion to Strike under Rule 12(f). ECF No. 88. Defendants request that this Court dismiss Plaintiffs' Count IV for anticipatory breach of contract and Count V for breach

of an agreement of which Plaintiffs are third-party beneficiaries, and strike paragraphs 89 and 90 of Count IV. This Opinion follows.

## STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is proper if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, which when accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff's claim must "give enough details about the subject matter of the case to present a story that holds together" to be plausible. *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). A court must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993).

When evaluating a motion to dismiss, courts must accept as true all factual allegations in the complaint. *Ashcroft*, 556 U.S. at 678. However, the court need not accept as true the complaint's legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 555). Conclusory allegations are "not entitled to be assumed true." *Id.*

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must give fair notice of what the claim is and the grounds upon which it rests. *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776–77 (7th Cir. 2007). Fair notice is not enough by itself; in addition, the allegations must show that it is plausible, rather than merely speculative, that the plaintiff is entitled to relief. *Tamayo v.*

*Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). Moreover, a court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

## ANALYSIS

I.  **Settlement Letter**

Count IV of Plaintiffs' Second Amended Complaint consists of the following:

> 89. CST has indicated to Plaintiffs that it is refusing to perform the reclamation work required by the Contract, and required by permits acquired pursuant to the Contract, unless Plaintiffs acquiesce to unreasonable demands, including:
>
>> a. That CST be indemnified and held harmless by Plaintiffs for any reclamation work it performs; and
>> b. That CST be permitted to excavate land outside the boundaries of the Mining Tract/Tract 1 and held in separate title as part of its reclamation efforts.
>
> 90. CST's refusal to perform the obligations of the Contract unless Plaintiffs acquiesce to CST's unreasonable demands acts as a unilateral and unjustified termination of the Contract by CST, and excuses any requirement that Plaintiffs allow CST to perform the Contractor allow CST an opportunity to cure its defaults.

ECF No. 80 at 19. Defendants argue that the source of these claims are from a November 27, 2018 settlement letter from the undersigned to Price's attorney at the time. The letter has been provided as an exhibit to the instant Motion. ECF No. 89. Defendants state that the Court should strike paragraphs 89 and 90 from Plaintiffs' Second Amended Complaint and dismiss Count IV because settlement negotiations are inadmissible under Federal Rule of Evidence 408(a). Plaintiffs argue that the settlement letter is extrinsic evidence that cannot be relied upon in this instant Motion as it was not part of their Second Amended Complaint. Regardless, Plaintiffs claim that evidence of settlement negotiations that are not offered to prove or disprove the validity of a claim, but rather, offered to show anticipatory breach or repudiation of contract, is allowed.

Under Illinois law, "[a]n anticipatory breach [of contract], also called anticipatory repudiation, is a manifestation by one party to a contract of an intent not to perform its contractual duty when the time comes for it to do so even if the other party has rendered full and complete performance." *Tower Inv'rs, LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927, 940 (Ill. App. Ct. 2007).

Rule 408 states in relevant part that "conduct or a statement made during compromise negotiations" is inadmissible when used to "prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). "Settlements will not be encouraged if one party during settlement talks seduces the other party into violating the contract and then, when settlement ultimately is not reached, accuses the other party at trial of violating the contract." *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 484 (7th Cir. 2000). The purpose of Rule 408 is to encourage settlements. *Cent. Soya Co. Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 944 (7th Cir. 1982). "The fear is that settlement negotiations will be inhibited if the parties know that their statements may later be used as admissions of liability." *Id.* Rule 408 does not require exclusion when the evidence is offered "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). "Rule 408 creates a narrow exclusion from admissibility as evidence." *Clark v. Experian Info. Sols., Inc.,* No. 03 C 7882, 2006 WL 626820, at *2 (N.D. Ill. Jan. 6, 2006).

Moreover, a court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Nonetheless, where a document referenced in the complaint is central to plaintiff's claims, the court may consider it in ruling on the motion to dismiss. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). The Seventh Circuit has been relatively liberal in its approach when

admitting outside documents that are central to a plaintiff's claim. *See, e.g., Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (upholding consideration of an agreement quoted in the complaint and central to the question whether a property interest existed); *Venture Associates v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1992) (admitting letters, to which the complaint referred, that established the parties' contractual relationship); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 739 (7th Cir. 1986) (permitting reference to a welfare plan referred to in the complaint in order to decide whether the plan qualifies under ERISA).

Here, the letter in question states, "Scharf Materials stands ready, willing, and able to complete this reclamation. This matter can be settled. I would like to suggest option and attendant conditions." ECF No. 89 at 4. The letter closes by stating, "[i]f it is possible to resolve the matter reasonably please let me know." *Id.* at 5. The language of this introduction and conclusion reflects that the letter is an offer to settle by Defendant CSM. Accordingly, the Court will consider this letter as part of settlement negotiations. While the document is not explicitly mentioned in Plaintiffs' Second Amended Complaint, Plaintiffs plainly include in their response that "[t]he . . . allegations . . . are *supported*, not refuted, by Exhibit A." ECF No. 90 at 6 (emphasis added). The Court also notes parallels between the letter, which seeks indemnity for certain reclamation efforts with outlines for different options to excavate land, and the allegations from Plaintiffs' Second Amended Complaint. For example, in the letter, CSM requests "clear indemnity supported by something more than a promise from the Prices. We would also seek indemnity against any claim of erosion due to rising lake level." ECF No. 89 at 5. Notably, Plaintiffs do not deny that the source of their allegations are from this settlement letter, which is Exhibit A of Defendants' Motion. Accordingly, the statements in the settlement letter are central to Count IV and the Court

will consider this extrinsic evidence without converting this instant Motion into one for summary judgment.

The settlement letter was "furnish[ed] or offer[ed] or promis[ed] to furnish . . . a valuable consideration in compromising or attempting to compromise a claim." Fed. R. Evid. 408(a). Therefore, the admissibility of evidence of the offer under Rule 408 depends on whether it goes to "prove liability of or invalidity of the claim," or whether it is offered for "another purpose." *Id.* Plaintiffs claim that the statements from the settlement letter qualify as "another purpose" as they are offered to show anticipatory breach or repudiation of a contract and are not used to prove or disprove the validity of a disputed claim. Defendants argue that the underlying litigation and settlement letter reflect that there is a difference of interpretation regarding the obligations of the Contract at issue in this litigation; therefore, the language from the settlement letter is being offered to prove liability of Plaintiffs' claim. Plaintiffs have not provided a single case that supports their argument that Rule 408 does not apply when a settlement letter is offered to show anticipatory breach or repudiation of contract, and the Court has also not been able to find a case that supports that theory. Plaintiffs ignore the plain language of the Rule prohibiting any evidence of settlement negotiations offered to prove liability for or invalidity of the claim. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682, 689 (7th Cir. 2005) ("By its terms, the rule forbids admission of evidence only when it is offered to prove 'liability for or invalidity of the claim or its amount.' ") (internal citation omitted); *see also Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992) (relying on "plain language" of Rule 408 to find settlement offer inadmissible). The Court has not found that the statements from the settlement letter qualify as an exception to Rule 408 as they are not offered for another purpose; rather, by seeking to employ the statements to prove Plaintiffs

7

claim that Defendants intended to breach the Contract at issue is manifestly a prohibited purpose under Rule 408.

Accordingly, the Court grants Defendants' Motion to Dismiss Count IV and strikes paragraphs 89 and 90 of Plaintiffs' Second Amended Complaint under Rule 12(f).

## II.     Reclamation Plan

Count V of Plaintiffs' Second Amended Complaint is for breach of the Reclamation Plan and related Finding of Fact and Stipulations ("Plan") that Defendant CST entered into with the McLean County Department of Building and Zoning ("McLean County"). The Plan provided CST with a special use permit for CST to perform reclamation and restoration of certain land, including the "Mining Tract." ECF Nos. 83-4, 83-5. Plaintiffs allege that they were intended beneficiaries of the Plan and they have been damaged by CST's breach of that Plan when CST did not perform the required reclamation work. Defendants argue that the Plan is not a traditional, enforceable contract. Therefore, Defendants claim that Plaintiffs cannot be considered intended beneficiaries.

The elements of a contract are, of course, offer, acceptance, and consideration. *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996). Under Illinois law, a breach of contract claim consists of four elements: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) injury to the plaintiff. *Gallagher Corp. v. Russ,* 721 N.E.2d 605 (Ill. App. Ct. 1999). "In order to enforce rights under a contract, a plaintiff must be a party to the contract, in privity with a party to the contract, or an intended third-party beneficiary to the contract." *Camp v. TNT Logistics N. Am., Inc.*, No. 04-1358, 2006 WL 8441085, at *1 (C.D. Ill. Aug. 4, 2006) (internal citation omitted). To be an intended third-party beneficiary, a plaintiff "must clearly show that such benefit was not purely incidental but that the contract was made for [his or her] direct benefit." *White Hen Pantry, Inc. v. Cha*, 574 N.E.2d 104, 108 (Ill. App. Ct.

1991). In other words, "[o]nly third parties who are direct beneficiaries have rights under a contract." *155 Harbor Drive Condo. Ass'n v. Harbor Point Inc.*, 568 N.E.2d 365, 374 (Ill. App. Ct. 1991).

While courts have reached divergent conclusions about whether a particular special use permit constitutes a binding contract, they agree that an examination of the language and characteristics of the permit is critical to the determination. *Son Broad., Inc. v. United States*, 52 Fed. Cl. 815, 822 (2002). Plaintiffs argue that they have adequately alleged that the Plan is a contract, because in consideration for resolving disputes with McLean County, Defendant CST was granted the special permit and entered the Plan. After examining the characteristics of the Plan, the Court does not agree with Plaintiffs and finds that the language is more akin to a license rather than a contract. The elements of offer and acceptance do not exist in this instance; instead, Defendant CST "request[ed] a special use in order to allow a facility for the extraction of sand, gravel, and top soil …" and was granted such a permit. ECF No. 83-5 at 2. "A contract creates legally enforceable rights and duties between the parties whereby the breach of such agreement gives rise to a remedy." *Hage v. United States*, 35 Fed. Cl. 147, 166 (1996) (internal citation omitted). Whereas, "a license creates a personal or revocable privilege that allows a specific party to utilize the land of another for a specific purpose but does not vest any title or interest in such property in the licensee." *Id.* The court in *Hage* concluded that the special use permit at issue in that case was "not a contract the breach of which may require damages" and it "did not create affirmative government obligations,[] the plaintiff could not legally assign or transfer the permit, and that the government had reserved the right to cancel the permit on certain conditions." *Id.* at 167; *see also S. Fork Livestock P'ship v. United States*, 183 F. Supp. 3d 1111, 1118 (D. Nev. 2016) (court held that the grazing permits the government granted plaintiff did not constitute valid

contracts and that they were "licenses conferring certain privileges . . .") Similarly here, the special use permit that was part of the Plan that McLean County granted Defendant CST does not indicate that Defendant CST acquired interest in the improvements to the property after the permit terminated nor does it provide any damages should a "breach" occur. The Plan simply outlined the parameters of the special use permit that allowed Defendant CST to utilize the land for a specific purpose.

Accordingly, since Plaintiffs cannot establish the existence of a contract, the Court grants Defendants' Motion to Dismiss Count V.

### III. Time to Answer

Plaintiffs have also argued that Defendants have failed to timely answer Counts I, II, and III of the Second Amended Complaint, and therefore, Defendants are in default for failing to file a timely response. This is not the case. Since Defendants filed a Motion to Dismiss, their time to file an Answer to the Second Amended Complaint would be within fourteen days after the Court's decision is issued. *See* Fed. R. Civ. P. 12(a)(4). Accordingly, Defendants must file their Answer within fourteen days from the date of this Order.

### CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss and Strike [88] are GRANTED. Counts IV and V of Plaintiffs' Second Amended Complaint are DISMISSED. Defendants must file an Answer to Plaintiffs' Second Amended Complaint within fourteen days of the entry of this Order.

ENTERED this 10th day of November, 2020.

        /s/ Michael M. Mihm
        Michael M. Mihm
        United States District Judge