UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| WILLIAM BROKAW PRICE, SHARON PRICE, and WINDFALL PROPERTIES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CARRI SCHARF TRUCKING, INC., an Illinois Corporation, and JOSEPH A. SCHARF, and CARRI SCHARF MATERIALS COMPANY, an Illinois Corporation, <br><br> Defendants. | Case No. 19-1162 |

## ORDER AND OPINION

This matter is now before the Court on Counter Defendant William Brokaw Price's ("William") and Third-Party Defendant Theodosia Price's ("Theodosia") Motions to Dismiss Third-Party Plaintiff Carri Scharf Trucking, Inc.'s ("CST") Third-Party Complaint and Counterclaims. ECF Nos. 107, 116. William also filed a Motion to Strike CST's Response. ECF No. 135. For the reasons stated below, the Motions are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This case involves a land dispute that stems from a Contract for the Sale of Sand, Gravel, and Topsoil ("Contract") that William's parents and CST entered into on or about January 7, 1997.[1] The Contract gave CST certain rights to mine and remove materials on what has been described as the "East Portion of the Farm Tract" or the "Mining Tract." William's parents jointly owned

---

[1] The facts in the Background section are derived from Plaintiffs' Second Amended Complaint. ECF No. 80.

certain real property, inclusive of both "East" and "West Portions of the Farm Tract." William's sister, Theodosia, is the Trustee of the William Brokaw Price Trust and of the Barbara Scott Price Trust (referred to collectively as "Trusts"). On May 31, 2018, in her capacity as Trustee of the Trusts, Theodosia conveyed the "West Portion of the Farm Tract" to William, and the "East Portion of the Farm Tract" or the "Mining Tract" remained the property of the Trusts. On April 30, 2019, Theodosia assigned all claims involving the "Farm Tract" to William. On September 27, 2019, William's sister conveyed the "Mining Tract" to Plaintiff Windfall Properties, LLC. Because the Court recounted in detail the background of this case in its previous Orders addressing Defendants' earlier motions to dismiss, the Court will incorporate the remaining alleged facts in this Opinion.

On May 13, 2019, Plaintiff William filed a Complaint. ECF No. 1. On June 11, 2019, Defendants CST and Joseph A. Scharf ("Scharf") filed a Motion to Dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). ECF No. 6. On August 20, 2019, the Court heard oral arguments on the matter, denied Defendants' Motion to Dismiss, and ordered Plaintiff to amend his Complaint. Text Order 8/20/19. On August 27, 2019, Plaintiff filed an Amended Complaint. ECF No. 18. On September 10, 2019, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) or 12(e). ECF No. 19. On October 1, 2019, the Court denied Defendants' Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 21. The parties engaged in discovery over the next several months. On August 11, 2020, a Second Amended Complaint was filed, which added Sharon Price ("Sharon") and Windfall Properties, LLC ("Windfall") as additional Plaintiffs and Carri Scharf Materials Company ("CSM") as a Defendant. ECF No. 80. Sharon is William's wife and Windfall is a company they own. *Id.* at ¶ ¶ 2, 4. Scharf is the president of CSM. *Id.* at ¶ 13, On September 4, 2020, Defendants filed a Motion

to Dismiss Plaintiffs' Second Amended Complaint under Rule 12(b)(6) and a Motion to Strike under Rule 12(f). ECF No. 88. On September 18, 2020, Plaintiffs filed their response. ECF No. 90. On October 7, 2020, Defendants filed their reply. ECF No. 95. On November 10, 2020, the Court granted Defendants' Motions to Dismiss and Strike. ECF No. 97. On December 30, 2020, William and Theodosia filed Motions to Dismiss CST's Third-Party Complaint and Counterclaims under Rule 12(b)(6). ECF Nos. 107, 116. On January 22, 2021, CST filed its responses. ECF Nos. 124, 125. On February 9, 2021, William filed a Motion to Strike CST's response. ECF No. 135. This Opinion follows.

## STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is proper if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, which when accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff's claim must "give enough details about the subject matter of the case to present a story that holds together" to be plausible. *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). A court must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993).

When evaluating a motion to dismiss, courts must accept as true all factual allegations in the complaint. *Ashcroft*, 556 U.S. at 678. However, the court need not accept as true the complaint's legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 555). Conclusory allegations are "not entitled to be assumed true." *Id.*

## ANALYSIS

In CST's Answer, it included a Third-Party Complaint and raised four Counterclaims: (1) breach of contract; (2) anticipatory breach of contract; (iii) tortious interference with a contract; and (4) an action for declaratory relief. ECF No. 100.

### I.  Breach of Contract and Anticipatory Breach of Contract

William and Theodosia both argue they were not a party to the Contract during the period from 2016 to early 2018, and therefore, should not be liable for breach of contract or anticipatory breach. William contends that he has never owned the majority of the land upon which CST was permitted to mine (the "Mining Tract"). William also argues that CST's Counterclaims for breach of contract and anticipatory breach of contract fail, because CST was required to fully complete its restoration work before the time William acquired an interest in land, and William's alleged actions constitute neither a breach of, nor a repudiation of, the Contract. CST contends that William took on the liability of all prior owners of the property at issue through voluntary assignation. According to CST, when they were attempting to finish the work outlined in the Contract, William and Theodosia, along with their agents, interfered and stopped CST from completing the work by ordering them to vacate the property.

The elements of a contract are, of course, offer, acceptance, and consideration. *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996). Under Illinois law, a breach of contract claim consists of four elements: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) injury to the plaintiff. *Gallagher Corp. v. Russ,* 721 N.E.2d 605 (Ill. App. Ct. 1999). "An anticipatory breach [of contract], also called anticipatory repudiation, is a manifestation by one party to a contract of an intent not to perform its contractual duty when the

time comes for it to do so even if the other party has rendered full and complete performance." *Tower Inv'rs, LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927, 940 (Ill. App. Ct. 2007). Additionally, " . . .a cause of action based on a contract may be brought only by a party to that contract, by someone in privity with such a party . . . or by an intended third-party beneficiary of the contract." *Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 602 (7th Cir. 2001). As *Kaplan* further notes, "[p]rivity accompanies the valid assignment of rights under a contract because it puts the assignee in the shoes of the assignor-because the assignor was in privity with the opposite contracting party, so is the assignee." *Id.* (internal quotations omitted).

CST alleges that "[f]rom 2016 through 2018, CST and its affiliates entered the property outlined under the Contract a number of times to finish the work . . . under the Contract . . ." ECF No. 100 at 37. The Contract gave CST certain rights to mine and remove materials on the "East Portion of the Farm Tract" or the "Mining Tract." William's parents jointly owned certain real property, inclusive of both "East" and "West Portions of the Farm Tract." On April 30, 2019, Theodosia, in her capacity as trustee of the Trusts assigned to William all claims involving the "Farm Tract." Plaintiffs alleged in their Second Amended Complaint that " . . . [u]nder Article 19 of the Contract, the covenants and terms of the Contract run with the land and are binding and operative upon the Contract's parties, permitted assignees, sublessees and grantees under the Contract." ECF No. 80 at 17. To determine whether a covenant runs with the land, "a court looks to whether: (1) the grantee and the grantor intended the covenant to run with the land; (2) the covenant touches and concerns the land; and (3) there is privity of estate between the party claiming the benefit and the party resting under the burden of the covenant." *Bank of Am., N.A. v. Cannonball LLC*, 12 N.E.3d 841, 847–48 (Ill. App. 2014). While neither William nor Theodosia were signatories to the Contract, there is express language that the terms of the Contract run with

the land; therefore, there is a suggestion that the parties intended the covenants to run with the land. Article 20 of the Contract also confirms that all "covenants, terms and conditions of this Contract shall run with the land and be in all respects binding and operative upon the parties hereto and all permitted assignees . . . and grantees under the Contract." ECF No. 83-1 at 16. Additionally, the covenant includes the land at issue and there is privity of estate since Theodosia, in her capacity as trustee of the Trusts, assigned to William all claims involving the "Farm Tract."

Based on the foregoing, the Court finds that the obligations of the Contract did run with the land and William may be in privity of estate as part of the land at issue was transferred to him, along with Theodosia in her capacity as Trustee and assignor. Accordingly, the Court declines to dismiss CST's first and second Counterclaim for breach of contract and anticipatory breach.

## II.    Tortious Interference with Contract

CST states that it has reviewed its Counterclaim for tortious interference of contract and agrees that additional details and clarity are needed. CST has requested the Court allow it to replead this claim. William has asked the Court to strike CST's request to replead its claim of tortious interference with contract stating that the request for leave to amend is procedurally improper and that CST must obtain leave of the Court to amend its Counterclaim.

A court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). While CST did not file a separate motion for leave, the Court finds it sufficiently requested that it be granted leave to amend and allege that:

> [William] interfered with the Contract when at least some of the property at issue in the Contract was under the control of the two trusts, and that he induced a third-party, Theodosia Price, in her capacity as trustee, to breach the contract when at least some the property at issue was still under the control of the two trusts.

ECF No. 124 at 12. The Court does not find the request for leave to amend redundant, immaterial, impertinent, or scandalous. Accordingly, the Court will not require CST to file a separate motion

6

at this time and instead will allow CST to amend its Counterclaim, if it can do so in good faith, within twenty-one days from this Order.

### III. Declaratory Judgment

CST seeks declaratory judgment that "Article 14 of the Contract entails the entirety of all obligations of CST for the condition of the property at termination of the Contract . . ." ECF No. 100 at 42. William argues that CST is improperly seeking a declaration of its obligations more than a decade after its time for performance expired.

Under Illinois law, a "declaratory judgment action requires: (1) a plaintiff with a tangible, legal interest; (2) a defendant with an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Adkins Energy, LLC v. Delta–T Corp.*, 806 N.E.2d 1273, 1275 (Ill. App. Ct. 2004) (internal citations omitted). A declaratory judgment action "is not the proper vehicle for presenting what are, in essence, plaintiff's breach of contract allegations." *Karimi v. 401 N. Wabash Venture, LLC*, 952 N.E.2d 1278, 1283 (Ill. App. Ct. 2011). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Some factors that may be considered in making this determination also include "whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue' " and "whether there is an alternative remedy that is better or more effective." *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994) (internal citation and quotation omitted).

There is clearly an actual controversy in the present case, as evidenced by the numerous disputed claims and counterclaims that all stem from the Contract. Under a typical failure to state

a claim analysis, CST has given notice of their claims and adequately pleaded facts in support of them; however, the purpose of declaratory judgments—resolving uncertainty and affording early adjudication to avoid accrual of damages—would not be served by CST's declaratory judgment claim. *See Publications Int'l, Ltd. v. McRae*, 953 F. Supp. 223, 224 (N.D. Ill. 1996) (stating purpose of declaratory judgment is "to avoid accrual of avoidable damages to one not certain of his rights, and to afford an early adjudication of whatever damages may have accrued when the adversary does not see fit to bring suit.") It is not to give the alleged wrongdoer a choice of forum. While CST's Counterclaim is a typical declaratory judgment claim (seeking to know if it has any obligations at all, to clear up any uncertainty of its contractual obligations, and not alleging any substantive claim or seeking relief beyond a declaration of rights and relationships), CST's counterclaim for breach of contract is a more effective alternative. Federal courts have discretion to decline to hear a declaratory judgment action. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 746-47 (7th Cir. 1987). "[I]f the declaratory judgment will clarify and settle the legal relations at issue and afford parties relief from insecurity and uncertainty, the declaratory judgment action is usually heard." *Intervisual Communications, Inc. v. Volkert*, 975 F. Supp. 1092, 1099 (N.D. Ill. 1997). However, courts often decline to hear a declaratory judgment counterclaim where such a counterclaim is also found to be redundant of the substantive claims raised by the plaintiff. *See Nielsen Co. (US), LLC v. Truck Ads, LLC*, 2011 WL 221838, at *5 (N.D. Ill. Jan. 24, 2011). In addition to finding CST's Counterclaim for breach of contract more effective, on the face of the pleadings, the Counterclaim also appears to raise similar facts and legal issues raised by the Plaintiffs' Second Amended Complaint. Both dispute the obligation of the parties under the Contract, specifically, under Article 14. See ECF Nos. 80 at 18; 100 at 42.

Based on the foregoing, the Court dismisses CST's fourth Counterclaim for declaratory judgment.

## CONCLUSION

For the reasons stated above, Counter Defendant William Brokaw Price's and Third-Party Defendant Theodosia Price's [107] and [116] Motions to Dismiss are GRANTED IN PART and DENIED IN PART. Counter Defendant William Brokaw Price's [135] Motion to Strike is DENIED. Third-Party Plaintiff Carri Scharf Trucking, Inc. is allowed leave to replead its third Counterclaim for tortious interference of contract within twenty-one (21) days of this Order, if it can do so in good faith.

ENTERED this 22nd day of February, 2020.

                                            /s/ Michael M. Mihm
                                            Michael M. Mihm
                                            United States District Judge