## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| WILLIAM BROKAW PRICE, SHARON PRICE, and WINDFALL PROPERTIES, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 19-1162 |
| CARRI SCHARF TRUCKING, INC., an Illinois Corporation, and JOSEPH A. SCHARF, and CARRI SCHARF MATERIALS COMPANY, an Illinois Corporation, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## <u>OPINION AND ORDER</u>

Pending before the Court are Defendants Carri Scharf Trucking, Inc. ("CST"), Carri Scarf Materials Company ("CSM"), and Joseph A. Scharf's Motion for Summary Judgment (ECF No. 264) and Plaintiffs William Brokaw Price ("Brokaw"), Sharon Price, and Windfall Properties, LLC, and Third-Party Defendant Theodosia Price's Motion for Summary Judgment. ECF No. 263. For the reasons stated below, these Motions are GRANTED in part and DENIED in part.

## JURISDICTION AND VENUE

There is complete diversity of citizenship with all Plaintiffs being citizens of Washington and all Defendants citizens of Illinois. ECF No. 254 at 3. Specifically, Sharon and Brokaw Price are both citizens of Washington and they are the sole members of Windfall Properties, LLC. *Id*. Accordingly, Windfall Properties is a citizen of Washington for the purposes of 28 U.S.C. § 1332(a)(1). *See generally Cosgrove v. Bartolotta*, 150 F.3d 72, 731 (7th Cir. 1998) ("the citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members.").

Defendants CST and CSM are Illinois Corporations in good standing with the Illinois Secretary of State. ECF Nos. 254 at 3; 262 at 2–3. Their principal offices are in Bloomington, Illinois and they conduct substantially all of their business in the State of Illinois. *Id*. Defendant Scharf is a citizen of Illinois and the current president of both CST and CSM. *Id*. Plaintiffs also point to evidence that their damages will exceed $75,000. Accordingly, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1).

Venue is appropriate in the Central District of Illinois since Defendants reside within the jurisdiction and because the events that are the basis of the claim transpired within the jurisdiction. *See* 28 U.S.C.A. §1391(b)(1) and (2). The claims specifically involve trespass to real property, conversion from resources taken from that property, and breach of contractual covenants with respect to the reclamation of real property, with the property being located in McLean County, Illinois. ECF No. 254.

## BACKGROUND

The dispute stems from a contract between Plaintiff Brokaw's parents, William and Barbara Price, and CST entered into on or about January 7, 1997 ("the Contract"). The Contract granted CST the exclusive right to mining operations (a "gravel pit") on a sixty-acre portion of the Price's property ("Mining Tract"). The Contract gave CST permission to extract sand, gravel, and topsoil from the Mining Tract in order to sell. In exchange, the Prices would receive a royalty on the sales of the extracted materials. ECF No. 83-1 at 2.

Under the Contract, CST was required to obtain a Special Use Permit from McLean County allowing mining operations on agriculturally zoned property (the "Permit"). The Permit set forth McLean County's requirements for CST's mining operation on the Price's land, including a reclamation requirement. The reclamation process required a reclamation bond, ongoing

reclamation, and final reclamation. The Contract required Scharf assume the responsibility of complying with all local, State, and Federal regulations or orders regarding the use of the premises. ECF No. 255 at 10. Scharf's failure to comply with said laws or regulation would constitute a default under the Contract. *Id.* The Contract also required CST to remove all equipment and improvements, leave the lake with a certain shoreline, and distribute the remaining sand gravel or overburden over the premises upon termination of the Contract. ECF Nos. 83-1 at 13. CST was also required to comply with Price's reasonable plans and directions regarding the distribution of the left-over material. *Id.*

Ultimately, the Contract was renewed for the last time on November 7, 2009. ECF Nos. 264 at 13; 269 at 4. Under the terms of the renewed Contract, the mining provisions expired on June 1, 2010, and the article controlling royalties was in effect until December 31, 2010.

Since the Contract was signed, the ownership of the land has shifted, and Defendants blame the conflict largely on the change in owners. Initially, William and Barbara owned the land when they entered the Contract in 1997. In 2003, William and Barbara conveyed an undivided one-half interest in the Farm Tract and Mining Tract to each of their respective trusts. William was the trustee of the William Brokaw Price trust and Barbara was the trustee of the Barbara Scott Price Trust. ECF No. 268 at 3. Everything went to the Barbara Scott Price Trust when William died in 2010. ECF No. 233-7 at 26. Theodosia Price succeeded her mother as trustee of the Barbara Scott Price Trust following Barbara's resignation on March 21, 2016. ECF Nos. 264 at 14; 269 at 4. Barbara passed away on September 18, 2017. ECF No. 269-5 at 3. Theodosia, in her capacity as trustee, conveyed the Farm Tract to Brokaw on May 31, 2018. ECF Nos. 264 at 20 and 30; 269 at 9. On September 27, 2019, Theodosia, in her capacity as trustee, conveyed the Mining Tract to Brokaw. ECF No. 233-7 at 54. Plaintiffs Brokaw and Shannon Price, and their company, Windfall,

LLC, now have the relevant ownership interest in the Mining Tract and Farm Tract. Theodosia, in her capacity as trustee also assigned to Brokaw all claims involving the property. ECF No. 264 at 26; 269 at 12.

Plaintiffs accuse Defendants of cutting corners on the reclamation work after the gravel pit operation closed. They also accuse Defendants of trespassing on the neighboring "Farm Tract," a seventy-acre parcel abutting the Mining Tract, to dig a large trench and steal topsoil. Plaintiffs express concern about the thirty-six-inch sewer pipe placed in the trench that runs for approximately two-hundred feet on the Farm Tract. Plaintiffs assert that this trench and piping connect the lake on the Mining Tract to Kickapoo Creek, in violation of the Special Use Permit. ECF No. 233 at 8–9. Plaintiffs also suggest that part of the purpose of digging this trench was to steal topsoil to use in the reclamation process on the Mining Tract. Plaintiffs also provide evidence that the Mining Tract does not have proper topsoil, that the lake was not properly reclaimed, and that the poor reclamation work has caused needless flooding on the land. Plaintiffs' expert estimates that properly reclaiming the land could now cost over a million dollars.

Defendants argue that problems arose when Theodosia and Brokaw became involved. They assert that Theodosia and Brokaw repeatedly ordered them from the land during the reclamation process, which they assert resulted in Defendants paying employment and equipment costs for time they were not working. ECF No. 100.[1] Defendants claim that Plaintiffs unreasonably withheld access to the adjoining Farm Tract and prevented them from completing the reclamation work. While the Contract and Permit limit Defendants to certain acreage for the purpose of the gravel pit, Defendants argue that William Price allowed them on the Farm Tract to support the mining work. Defendants suggest they should have been allowed to continue with the work and that the

---

[1] In their answer to the Third Amended Complaint (ECF No. 262) Defendants incorporate portions of their prior answer by reference.

problems largely arise from Theodosia and Brokaw's lack of understanding and unreasonable expectations.

The parties are currently operating under the Third Amended Complaint alleging Trespass (Count I) and Conversion (Count II) against CST, CSM, and Joseph Scharf, and Breach of Contract against CST and CSM (Count III). ECF No. 80.[2] Defendants filed a counterclaim against Brokaw and a Third-Party Complaint against Theodosia Price alleging Breach of Contract (Count I) and Anticipatory Breach of Contract (Count II). Defendants have also raised numerous affirmative defenses alleging the claims are time barred and that they otherwise had a right to work on the Farm Tract.

Presently before the Court are the following: Plaintiffs' Motion for Summary Judgment on Count III of the Third Amended Complaint as to liability, on Defendants' affirmative defenses, the Counterclaims brought against Brokaw Price, and Third-Party Defendant Theodosia Price's Motion for Summary Judgment on Counts I and II of the Third-Party Complaint. (ECF No. 233, 235, and 263). Also, before this Court is Defendants CST, CSM, and Joseph Scharf's and Counter/Third-Party Plaintiff CST's Motion for Summary Judgment on all pending claims. ECF Nos. 236, 264. The matters are fully briefed, and this Order follows.

## LEGAL STANDARD

Summary judgment is appropriate where the movant shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials" that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In resolving a motion for summary judgment, "[t]he court has one task and one

---

[2] The Complaint included other claims that the Court previously dismissed and are not currently at issue.

task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

To withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When presented with a motion for summary judgment, the Court must construe "the record in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). If the evidence, however, is "merely colorable, or is not significantly probative or merely raises 'some metaphysical doubt as the material facts,' summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). Thus, to overcome the undisputed facts set forth in a motion for summary judgment, a non-movant cannot rest on the allegations in the complaint but must point to affidavits, depositions, or other evidence of an admissible sort that a genuine dispute of material fact exists between parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

## DISCUSSION

Here, there are competing motions for summary judgment and the parties have submitted competing evidence to support their own version of the facts. When Defendants are the nonmoving party, the Court must construe the facts in the light most favorable to them, and when Plaintiffs are the nonmoving party, the Court must construe the facts in the light most favorable to Plaintiffs. While the Court will recount different versions of the facts, based on which motion it is deciding, it does not vouch for their truth. *See Pauley*, 337 F.3d at 773.[3]

---

[3] The Court further observes that the briefing and attached exhibits are voluminous, so the Court focused on the facts necessary for resolving this motion. The Court did not fully rehash all of the evidence regarding communication from McLean County about the Special Use Permit and the reclamation process. The Court did not find the facts conclusive for either party and simply provided further confirmation that certain claims remain disputed.

I.    **Defendants' Motion for Summary Judgment on Trespass, Conversion, and Breach of Contract.**

Defendants move for summary judgment, arguing both that Plaintiffs failed to make a *prima facie* case and that affirmative defenses require summary judgment in their favor. Plaintiffs separately moved for summary judgment on Defendants' affirmative defenses, and the Court will address those defenses later in this order. Here, the Court addresses only whether Plaintiffs have provided support for the *prima facie* elements of each claim. As explained below, Plaintiffs set forth adequate support for their claims and Defendants' Motion is denied.

a.    **Trespass**

Trespass is a tort committed by the "invasion in the exclusive possession and physical condition of land." *Millers Mut. Ins. Ass'n of Ill. v. Graham Oil Co*., 668 N.E.2d 223, 230 (Ill. App. Ct. 1996); *see also Desnick v. American Broad. Cos., Inc.*, 44 F.3d 1345, 1351 (7th Cir. 1995) ("To enter upon another's land without consent is a trespass"). An invitee "becomes a trespasser when, after being invited onto the premises, he goes to another area beyond the scope of the original invitation." *Juzwicki v. Bd. of Managers, 1910-1912 Halsted Condo. Ass'n*, 2013 IL App. 1d 110754-U, 2013 WL 593376 (Ill. App. Ct. 2013). Individuals are not liable for an intentional trespass unless their acts pose a high degree of certainty that an intrusion upon another's property will result. *See Colwell Sys., Inc. v. Henson*, 452 N.E.2d 889 (Ill. App. Ct. 1983). Accordingly, "[i]t is a defense to an action for trespass that the defendant's entry was permitted by the terms of a valid and lawful contract." *Schweihs v. Chase Home Fin. LLC*, 2021 IL App (1st) 191779, ¶ 30, *appeal denied*, 183 N.E.3d 911 (Ill. 2021) (citing 87 C.J.S. Trespass § 49).

Plaintiffs allege that Defendants trespassed when Defendants' employees repeatedly entered the Farm Tract in 2016 – 2020 to dig a pit, chop down trees, and steal topsoil despite being repeatedly directed to not enter the property. Defendants assert that Plaintiffs did not have

7

exclusive possession and that Defendants otherwise had permission or other authority to be on the Farm Tract.

Defendants argue that Plaintiffs' tenant farmer, Todd Breese, held a leasehold interest in the Farm Tract, precluding Plaintiffs from bringing any trespass claim because they did not have exclusive possession of the land. Plaintiffs provide evidence that the Breese did not lease this particular area of the land since it was in a wooded area that was not tillable. ECF Nos. 269-4; 269-5; 269-6. Plaintiffs provide a copy of the lease that confirms Breese was only leasing approximately fifty-one acres and Breese, Brokaw, and Theodosia explain in their affidavits that this wooded area at issue was not part of their lease. *Id.* While the provided leases expired in 2012, the affiants assert that they were orally extended on the same terms. Brokaw, Theodosia, and Breese explain that Breese only leased tillable land and provide a satellite image that demonstrates the area in question is wooded. *Id.*

Defendants argue the Court should not consider this affidavit testimony. However, the Seventh Circuit has already "la[id] to rest the misconception that evidence presented in a 'self-serving' affidavit is never sufficient to thwart a summary judgment motion." *Pauley*, 337 F.3d at 773. Since the three affidavits are based on personal knowledge and meet the other requirements for evidence presented on personal knowledge they are "an acceptable method for a non-moving party to present evidence of disputed material facts." *Id.* Defendants also do not provide conclusive evidence to the contrary to support their assertion Breese leased the specific area in question. While Theodosia and Brokaw made comments about Breese leasing the "Farm Tract" the Court does not agree that this confirms he leased this specific acreage in question, particularly given the clarifying affidavits and the copy of the lease. Accordingly, the Court finds Todd Breese did not lease the

land in question and need not address the argument that a lease would prevent the landowners from bringing a trespass claim.

As to the issue of whether Defendants had permission– Plaintiffs have put forth evidence that William Price already complained about Scharf's work on the neighboring Farm Tract. In August 2006, William Price sent Scharf a letter raising various concerns, including the ditch that Scharf was using to control the lake level. ECF No. 251-14. Specifically, William expressed concern that the trench was non-compliant and told him he needed to fill the ditch and run the water through a tile. *Id*. William Price also told Scharf that if he wanted any change to the contract, no matter how small, put in writing. ECF No. 233-1 at 45. Moreover, even if William Price had ever consented to CST's presence on the Farm Tract, consent may be revoked. *Finch v. Theiss*, 107 N.E. 898, 902 (Ill. 1915); *see also* Restatement (Second) of Torts, § 160; 171.[4] Theodosia and Brokaw repeatedly made clear to Defendants, including in writing, that Defendants were not to enter the Farm Tract for the purpose of continuing to dig the trench. To the extent that Defendants argue that there was an oral contract with William Price, such an agreement would be subject to the Statute of Fraud and void if CST could not perform its obligation within a year. *See Scoville v.*

---

[4] The Seventh Circuit has repeatedly favorably cited the Restatement (Second) of Torts on the matter of trespass. *See e.g. Quiroz v. Chicago Transit Auth*., 2022 IL 127603, ¶ 28, reh'g denied (Nov. 28, 2022*); Mt. Zion State Bank & Tr. v. Consol. Commun., Inc.*, 660 N.E.2d 863, 871 (Ill. 1995); *Lee v. Chicago Transit Auth.*, 605 N.E.2d 493, 499 (Ill. 1992). The Restatement has made clear that consent is terminated by "termination of the possessor's possessory interest in the land" or "revocation of the possessor's consent, of which the actor knows or has reason to know." Restatement (Second) of Torts, § 171. The Restatement states that failure to remove "a structure, chattel, or other thing" after consent was revoked may constitute a trespass. *Id*. at § 160. The Restatement also provides an example:

> A executes and delivers to the B Telephone Company a document which both parties believe confers on the B Company an irrevocable license to erect and maintain telephone poles on A's land. A transfers the land to C, who discovers that the document and the acts done under it do not create an irrevocable license. C notifies the B Company to remove its poles from the land. The B Company's failure to remove the poles within a reasonable time is a trespass.

Accordingly, the Restatement is clear that consent can be revoked, even regarding structures on the land.

*Dehart*, 150 N.E.2d 369, 370 (Ill. App. Ct. 1958); *Anderson v. Collinson*, 20 N.E.2d 980, 981 (Ill. App. Ct. 1939).

Plaintiffs also provide photo-evidence of the deep, uncovered trench on the farmland with a large pipe running through it. Theodosia and Brokaw sent a cease-and-desist letter in 2016 on behalf of the Trust regarding Scharf's actions and repeatedly communicated that Scharf needed to have an engineered plan drawn up before they would allow him to continue work on the trench on the Farm Tract.

Defendants still insist that William Price approved the work. Price passed away in 2010, and in 2016, Brokaw and Theodosia sent a cease-and-desist letter on behalf of the Trust regarding Scharf's action on the Farm Tract. Certainly, Defendants' actions after 2016 were without permission. Defendants also point to language in the Contract that allows them to maintain and continue existing drainage. Plaintiffs have pointed evidence to support their position that there was not a thirty-six-inch sewer pipe in an open trench at the start of the contract. William Price's letter mentions a six-inch tile on the land which is a far cry from an enormous trench with sewer pipe running through it. Plaintiffs have presented sufficient evidence that Scharf exceeded the scope of his invitation by continuing to work on digging this large trench without permission. Plaintiffs also point to evidence that Defendants were entering the land to remove topsoil without permission, which Defendants do not justify with contractual language. Accordingly, Defendants' Motion for Summary Judgment on Count I (Trespass) is DENIED.

**b.  Conversion**

Plaintiffs allege that Defendants committed the tort of conversion when they took topsoil from the Farm Tract for their own use to meet their reclamation obligations under the Special Use Permit and Contract. Under Illinois law, "[c]onversion is the unauthorized deprivation of property

from a person entitled to its possession." *IOS Cap., Inc. v. Phoenix Printing, Inc.*, 808 N.E.2d 606, 610 (Ill. App. Ct. 2004). To prove conversion, a plaintiff must establish the following elements: "(1) the defendant's unauthorized and wrongful assumption of control, dominion, or ownership over the plaintiff's personal property; (2) the plaintiff's right in the property; (3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) the plaintiff's demand for possession of the property." *Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 806 N.E.2d 280, 285 (Ill. App. 2004). The Illinois Supreme Court has also relied on the Restatement (Second) of Torts, citing a portion which states that conversion "is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985) (quoting Restatement (Second) of Torts § 222A (1965)); *see also Dickson v. Riebling,* 333 N.E.2d 646, 648 (Ill. App. 3d Dist. 1975) ("All that is required is the exercise of control by the defendant over the chattel in a manner inconsistent with the plaintiff's right of possession").

Plaintiffs have provided photographs of the large trench that Defendants dug on the Farm Tract and have provided deposition testimony and emails to support their assertion that Defendants removed topsoil[5] from the Farm Tract to use in the reclamation of the Mining Tract. They further offer support that this topsoil was valuable. Defendants, on the other hand, assert that they could not be stealing if they were just moving Plaintiffs' dirt from one place to another and "any loss from one area [was] a gain to the other." ECF No. 272 at 15.

---

[5]Soil that is severed from the land "becomes chattel property" and is subject to conversion. *See Palumbo v. Harry M. Quinn, Inc.*, 55 N.E.2d 825, 827 (Ill. App. Ct. 1944) (citing *Citizens Natl. Bank v. Joseph Kesl & Sons Co.*, 33 N.E.2d 133 (Ill. App. Ct. 1941); *see also Bd. of Review of Alexander v. Prop. Tax Appeal Bd.*, 710 N.E.2d 915, 917 (Ill. App. Ct. 1999)(once minerals were severed from the land, they became personal property).

Plaintiffs provide evidence that Defendants dug the topsoil out of the ground, left a large trench, and moved the soil without permission. Defendants persisted in this action despite Plaintiffs' demands they stop taking topsoil. Defendants had no authority to take the topsoil for their own purposes. Defendants assumed control of the topsoil when they dug it out of the ground and moved it without permission, acting inconsistently with the rights of the owners of the property. At the time topsoil was removed in 2018, they moved the topsoil from land Brokaw owned to land that the Trust owned, further supporting Plaintiffs' argument. Moreover, Illinois Appellate Courts have repeatedly emphasized that for conversion "[a]ll that is required is the exercise of control by the defendant over the chattel in a manner inconsistent with the plaintiff's right of possession." *Id*; *Landfield Fin. Co. v. Feinerman*, 279 N.E.2d 30, 33 (Ill. App. 1st Dist. 1972); *Associates Discount Corp. v. Walker*, 188 N.E.2d 54, 56 (Ill. App. 2d Dist. 1963). Illinois Courts have further explained that, "[i]f a horse is permanently lamed, it remains a horse, the owner may still be in possession, and the horse may have value to a glue works, but it has become useless for the ordinary purposes of a horse. In such a case[,] there is a conversion." *Loman v. Freeman*, 874 N.E.2d 542, 552 (Ill. App. 4th Dist. 2006), *aff'd*, 890 N.E.2d 446 (Ill. 2008)(citing Restatement (Second) of Torts § 226). Thus, the property does not necessarily even have to leave the owner's possession for a conversion to have occurred.

Whether the properties have the same owner or not, Defendants exercised control over the topsoil in a manner inconsistent with Plaintiffs' right of possession and there is now a trench on Plaintiffs' property where they want dirt. Accordingly, the Court agrees with Plaintiffs that there is at least enough of a dispute on the issue of whether Defendants exercised control over the topsoil to such an extent that a conversion occurred. Accordingly, Defendants Motion Summary Judgment on the issue of Conversion (Count II) is denied.

### c.  Contract

To establish a breach of contract under Illinois law, plaintiffs must establish "(1) the existence of a contract between him and defendants, (2) his performance of his obligations under the contract, (3) defendants' failure to perform their obligations under the contract, and (4) damages resulting from the breach." *Walker v. Ridgeview Construction Co.,* 736 N.E.2d 1184*,* 1187 (Ill. 2000).[6] The Contract itself outlines a few requirements regarding the state of the land after mining. It requires that CST remove equipment, not deposit debris in the lake, and leave a proper shoreline on the lake. ECF No. 83-1 at 13–14. It also requires CST comply with "all local, state or Federal regulations or orders with respect to the use of the premises" and that "failure to comply with any said laws, [or] regulations . . . shall constitute a default hereunder." ECF No. 83-1 at 10. The Parties primarily disagree about whether the language requiring CST to comply with local regulations or orders means that it must comply with the terms of the Special Use Permit and the Reclamation Plan drafted pursuant to the Permit.

Plaintiffs assert that Defendants CST and CSM breached the contract by not complying with the Special Use Permit and by not maintaining the existing drainage and surrounding property in the condition that it was prior to the mining activities. Defendants argue that the contract does not directly require that it reclaim the land and that those provision are found in the Special Use Permit. Defendants assert that because the Court previously ruled that the Amended Reclamation Plan from April 30, 2017 does not qualify as an independent contract that could be directly enforced, Plaintiffs may not rely on the reclamation requirements found in the Permit and Amended Reclamation Plan to establish a breach of contract. Defendants also argue that Plaintiffs

---

[6] Defendants initially entered this contract with William and Barbara Price. Defendants bring a number of defenses, but at this stage, do not appear to argue that Plaintiffs are improper parties to bring a breach of contract claim. The parties do not clearly address the issue, so the Court assumes for the purposes of this motion that it is a non-issue.

did not perform their obligations under the contract and failed to give the required notice for default.

To the extent there is any ambiguity in the language of the Contract requiring CST to comply with local regulations, both William Price and Joseph Scharf testified as to their understanding of the contract. *See FDIC v. W.R. Grace & Co.*, 877 F.2d 614, 620 (7th Cir. 1989) ("Illinois law is reasonably clear in making the issue one of the parties' intentions as gleaned from the agreement itself if the agreement is unambiguous and, if it is ambiguous, from all pertinent evidence"). When CST was attempting to procure a permit, both William and Scharf testified before the McLean County Zoning Board. William Price testified that a breach of requirements from the board or any regulatory agency would be a breach of the contract. ECF No. 272 at 12. Scharf agreed that the Contract required a reclamation and cleanup, and that if he breached the requirement of any regulatory agency, he would be in breach of the contract. ECF No. 272 at 13. Accordingly, the Court agrees that the breach of the reclamation requirements of the Special Use Permit constitutes a breach of contract.

Defendants attempt to strain the Court's prior ruling dismissing Plaintiffs' claim for relief titled "Breach of an Agreement of Which Plaintiffs are Third Party Beneficiaries" to apply to this breach to contract claim. There, Plaintiffs asserted that the owners of the Mining Tract were the intended beneficiaries of the agreement between McLean County and CST and thus, could directly enforce the Reclamation Plan. ECF No. 80 at 20. Examining the language of the Reclamation Plan, the Court concluded that the language was more akin to a license than a contract in that the elements of offer and acceptance did not exist. ECF No. 97 at 9. Accordingly, the Court held that the Plaintiffs could not establish that the Reclamation Plan itself constituted a contract that could independently be enforced. *Id.*

There is a difference between arguing that the Special Use Permit and the Reclamation Plan were themselves contracts that Plaintiffs could independently enforce as third-party beneficiaries and arguing that there is a signed contract which makes a breach of the regulatory requirements a breach of the contract. Here, the Contract requires CST to comply with "all local, state or Federal regulations or orders with respect to the use of the premises" and that "failure to comply with any said laws, [or] regulations . . . shall constitute a default hereunder." Both Scharf and William Price confirmed that a breach of the Permit constituted a breach of the contract resolving any ambiguity in that provision. Accordingly, the Court similarly agrees that a breach of the Permit or Reclamation Plan can constitute a breach of the parties' Contract despite the Permit and Reclamation Plan not qualifying as contracts themselves.

Defendants also argue that Plaintiffs failed to give the required notice in the Contract before bringing suit. The Contract lays out a process to take in the event that Defendants default under the Contract. Price had the right to give a fifteen-day notice of default and termination if CST failed to comply with provisions of the Contract. CST had fifteen days to cure, and if it failed to do so, then Price could "declare this Contract to be at an end and be entitled to all remedies allowed by law." The Court agrees with Plaintiffs that, (1) the right to deliver notice and terminate the contract are not expressed in mandatory terms, and (2) the context of this provision indicates that it applied while mining operations were ongoing. ECF No. 269 at 45. Moreover, Plaintiffs nevertheless provided ample written notice to Defendants of the breach. The parties communicated about the Reclamation Plan, Plaintiffs sent a cease-and-desist notice in 2016, and there were numerous communications between the parties and their lawyers about the breach. It is unclear what better written notice could have been provided and Defendants' argument on this issue is without merit.

Plaintiffs have set forth evidence that Defendants did not reclaim the land according to the Special Use Permit and Reclamation Plan as the Contract requires. Plaintiffs have also submitted an expert report outlining that it would be very expensive to properly reclaim the land and have pointed the Court towards evidence suggesting they are also damaged due to a loss of land value due to the land being un-reclaimed. Accordingly, Defendants' Motion for Summary Judgment on the Breach of Contract Claim (Count III) is denied.

## II.     Counter-Defendants Motion for Summary Judgment on Counter/Third-Party Claims

Defendants have brought counter and third-party claims against Brokaw and Theodosia Price for Breach of Contract (Count I) and Anticipatory Breach of Contract (Count II). Defendants claim that each time they entered the process to complete the reclamation plan, Theodosia Price and Brokaw Price stopped them from completing the process and ordered them to vacate the property. Defendants argue that this was a breach of the contract by not allowing them to complete the reclamation process. Essentially, Defendants argue that they were willing to perform the contractual obligations but Plaintiffs, without justification, refused to accept the performance, and thus, are guilty of a breach of contract.

To establish a breach of contract under Illinois law, plaintiffs must establish "(1) the existence of a contract between him and defendants, (2) his performance of his obligations under the contract, (3) defendants' failure to perform their obligations under the contract, and (4) damages resulting from the breach." *See Walker v. Ridgeview Construction Co.,* 316 Ill. App. 3d 592 , 595-96, 736 N.E.2d 1184, 1187 (2000). Here, Defendants allege that Brokaw and Theodosia interfered and prevented them from performing reclamation work by sending a cease-and-desist letter to CST on June 17, 2016 and interfering with the work being performed in 2018. While Plaintiffs gave Defendants permission to enter the land to finish their reclamation work, Brokaw

16

and Theodosia did not contractually owe Defendants the right to enter the Farm Tract to dig a trench that they did not want on their land, particularly since the Contract limited Defendants work to a particular area and the Contract had otherwise expired years ago.

Plainly, CST has not performed its obligations under the Contract and the land remains un-reclaimed. Brokaw and Theodosia granted Defendants the ability to enter their land to belatedly fulfill their contractual obligations and revoked that consent when they began disturbing land outside the Mining Tract without their permission. Emails and texts indicate they would have considered allowing work on the Farm Tract to continue, but Defendants needed to show them an engineered plan since the trench was not their preference, the work appeared haphazard, and they feared this solution might require long-term maintenance.

At bottom, Defendants have not pointed the Court toward sufficient evidence in the record to demonstrate that in 2016–2018 the Contract required that they be permitted to enter onto the Farm Tract and build large trenches. Instead, the Contract describes the area the mining is to take place as an approximately 60-acre parcel, which is confirmed by the Special Use Permit. ECF No. 251-71. Defendants have various arguments about why their work on the trench was not trespass and may defend against Plaintiffs' breach of contract claim, but they cannot point to a contractual right to enter an area outside the Mining Tract years after the contract ended. Accordingly, counter-Defendants Theodosia and Brokaw Price's Motion for Summary Judgment on the counterclaims is granted.

### III.   Plaintiffs' Motion for Summary Judgment on Affirmative Defenses

Within Plaintiffs' Motion for Summary Judgment, they move the Court to dismiss certain affirmative defenses from Defendants' Answer, including statute of limitations, express and implied easement theories, Illinois Drainage law, waiver, consent, laches, material breach or

anticipatory repudiation, substantial performance, estoppel, frustration of purpose, breach of duty of good faith and fair dealing, doctrine of interference, doctrine of delay, pre-suit notice requirements, failure to mitigate, impermissible betterment, and failure to exhaust administrative remedies. In response, Defendants assert that they do not argue the theory of express or implied easement or the theory of laches as affirmative defenses. Accordingly, the Parties agree that Defendants cannot raise express or implied easement or the doctrine of laches as an affirmative defense. The Court will address Plaintiffs' remaining arguments regarding affirmative defenses below.

### 1) There is no genuine issue of fact regarding the timeliness of the trespass and conversion claims.

Defendants argue that the statute of limitations bars any trespass, conversion, or contract claims. The parties agree that a five-year statute of limitations governs the trespass and conversion claims, but Defendants attempt to argue that Plaintiffs did not firmly identify dates for when the offending conduct occurred on the Farm Tract. Defendants appear to suggest that based on Plaintiffs' assertions, they necessarily must have trespassed outside of the 5-year statute of limitations. Indeed, if all Plaintiffs were complaining about was the presence of a sewer pipe laid many years ago, Defendants may have a point. *See Feltmeier v. Feltmeier,* 798 N.E.2d 75 (Ill. 2003) ("where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest"). For example, in *Feltmeier*, the plaintiffs complained about a subway tunnel under their property. *Id*. There, the Illinois Supreme Court found that despite the continuing nature of the injury, the ill effects were from an initial violation and the initial violation was barred by the statute of limitations. *Id*.

Illinois Courts, however, distinguish between a continuing injury based on an initial violation and a continuing tort or even multiple discrete torts. A continuing tort involves a

continuing course of wrongful conduct. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177 (Ill. 2002). For example, a plaintiff can avoid the statute of repose in medical malpractice claims if the plaintiff can demonstrate "(1) a continuous and unbroken course of negligent treatment, and (2) that the treatment was so related as to constitute one wrong." *Pavlik v. Kornhaber*, 761 N.E.2d 175, 187 (Ill. App. Ct. 2001)(citing *Cunningham v. Huffman*, 609 N.E.2d 321 (Ill. 1993)). Where there is a continuing tort, the conduct is viewed as a whole and "the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease." *Pavlik* 761 N.E.2d at 187. Under this theory, the various trespasses would be treated as one tort and the statute of limitations would not begin to run until the last day Defendants trespassed.

Plaintiffs, however, do not appear to argue that the trespasses and conversions were so related as to constitute one wrong or that the continuing tort theory otherwise applies. Instead, Plaintiffs appear to suggest that the actions were discrete torts that occurred in the 2016–2018 timeframe. Where there are discrete decisions that result in repeated violations, each violation is a separate cause of action. *See Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177 (Ill. 2002). "[W]here initial statutory violation outside the limitations period is repeated later, each violation, begins the limitations period anew and recovery may be had for at least those violations that occurred within the limitations period." *Id.* (citing *Hendrix v. City of Yazoo City*, 911 F.2d 1102, 1103 (5th Cir. 1990)). While the initial act of laying certain sewer pipe while William was alive may be barred, that does not mean that years later, Defendants can trespass again and point to the prior trespass as evidence that the claim is time barred. Instead, Plaintiffs provide sufficient support that Defendants kept digging on the Farm Tract in 2016–2018 after Plaintiffs had been clear that Defendants were not to continue to work on the trench. While

trespasses and conversions that occurred more than five years before the Complaint was filed are barred, the discrete acts of trespass and conversion that occurred in the five years prior to the filing of the Complaint fall within the statute of limitations.

> **2.  There is no genuine issue of fact regarding the timeliness of the breach of contract claim.**

There is also no genuine dispute about the timeliness of the breach of contract claims. CST makes a half-hearted suggestion that perhaps the four-year statute of limitations that governs construction projects might govern this contract claim. The Court agrees with Plaintiffs that this four-year statute of limitation applies to "improvement to real property." *See* 735 ILCS 5/13-214. CST devotes only a few unpersuasive sentences to the argument that this four-year statute of limitations might apply. CST does not cite any cases where this was applied in a similar circumstance or otherwise explain why a mining operation would qualify as an improvement to real property. To the extent that there were other arguments to make on this issue, CST did not make them and therefore, those arguments are waived.

Instead, Section 13–206 of the Code of Civil Procedure governs breach of contract suits and applies a 10–year statute of limitations: "[A]ctions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued." 735 ILCS 5/13–206; *see also Clark v. Robert W. Baird Co.*, 142 F. Supp. 2d 1065, 1075 (N.D. Ill. 2001) (applying Illinois law). The limitations period starts to run from the date of the breach. *See Clark*, 142 F. Supp. 2d at 1075 (applying Illinois law).

The difficulty here arises from the various amendments to the Complaint. Brokaw first brought a Complaint on May 13, 2019, against Scharf and his company CST, alleging Trespass and Conversion against CST and Joseph Scharf, and Breach of Contract against CST. ECF No.1.

The Court ultimately denied the Defendants' Motion to Dismiss but ordered Plaintiff to amend the Complaint. On August 27, 2019, Brokaw filed an Amended Complaint alleging only Trespass and Conversion. ECF No. 18. On August 11, 2020, Plaintiffs brought a Second Amended Complaint alleging Trespass (Count I) and Conversion (Count II) against CST and Scharf and adding back in a Breach of Contract claim against CST (Count III). Plaintiffs also filed a Third Amended Complaint that was filed on April 7, 2022 adding CSM but largely keeping the Complaint the same as the Second Amended Complaint.

Defendants state, without citing any legal authority, that because Plaintiffs failed to replead the contract claim within seven days of the Court's August 20, 2019 order that Defendants file an Amended Complaint, the contract claim is now time-barred. Defendants agree that the end of the term of the contract based on the last extension was June 1, 2010 and suggest that date was when the statute of limitations began to run on the contract claim. ECF No. 268 at 39. Accordingly, that would mean Plaintiffs had until at least June 1, 2020 to bring any breach of contract claims. Defendants appear to concede that Brokaw initially brought a contract claim within the statute of limitations but argue that since he did not bring a contract claim in the Amended Complaint and only repleaded the contract claims in the Second Amended Complaint in August 2020, his claims fall outside the statute of limitations.

Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment relates back to the date of the original pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." The Supreme Court has emphasized that the "purpose of relation back" is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their

merits." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, (2010). The Seventh Circuit has also emphasized that the "Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems." *Staren v. Am. Nat'l Bank & Trust Co. of Chi.*, 529 F.2d 1257, 1263 (7th Cir. 1976).

In keeping with Seventh Circuit and Supreme Court precedent that cases should generally be tried on their merits and not be dispensed with due to technical procedural issues, the Court will liberally apply Rule 15(c)(1)(B). Since the Second Amended Complaint cites the same contractual agreement and the same conduct, the contract claim relates back to the initially filed 2019 Complaint. Thus, the Contract claim falls well within the statute of limitations.

Moreover, Scharf admits that the written Addendum of the Contract extended the terms of Article 4. Article 4 relates to the payment of royalties and Scharf testified that William Price wanted him to continue to sell the stockpiled sand. Article 14 of the Contract gives CST until "the end of the Contract period and any extension herein" to remove all the equipment, including the scale house and office. ECF No. 83-1 That same section requires that the lake be left with a "clean shoreline of thirty-degree slope, and any remaining sand, gravel or overburden will be distributed over the premises." *Id*. Certainly, the reclamation and contract provisions found in Article 14 would not occur until after the stockpiles of sand were addressed. Any other interpretation would lead to the absurd result that the parties agreed to allow the stockpiles of sand to remain until December 21, 2010, while at the same time, mandated reclamation, and distribution of the stockpiles no later than June 1, 2010. Accordingly, Plaintiffs must have had until at least December 21, 2020 to bring a breach of contract claims, and even the Second Amended Complaint was filed before then.

Plaintiffs' Motion for Summary Judgment as to Defendants' affirmative defense of Statute of Limitations is therefore denied.

**2) Defendants do not persuasively argue that the Illinois Drainage Code applies to the present case.**

Defendants argue that the Contract gave Defendants the authority to do work on the drainage solution and that applicable Illinois statutory authority governing rights of drainage through land with a unitary ownership later divided controls the instant matter. ECF No. 268 at 40. Defendants cite Illinois law that states,

> When a ditch, covered drain or levee is privately constructed through or on a tract of land and the ownership of such tract is thereafter divided, such ditch, covered drain or levee shall thereupon be deemed a drain or levee for the mutual benefit of all the portions of the original tract connected to, or protected by, such ditch, covered drain or levee.

70 ILCS 605/2-8. Defendants continue that prior to the mining operation, there was a six-inch tile that ran in the same direction as the drainage work that Scharf was stopped from completing. ECF No. 268 at 40. Defendants argue that starting in 2005-2006 water drained through a drainage ditch on land owned by the Prices and that the land later divided when it was transferred into the two trusts.

Illinois courts have applied this statute when adjacent landowners are in a dispute about whether certain landowners have a right to enter other lands where a drain is situated in order to conduct repairs. *See e.g. Halpin v. Schultz*, 917 N.E.2d 436 (Ill. 2009). However, Defendants are not landowners and do not connect the dots between this statute and their argument that they could construct a thirty-six-inch sewer pipe where a six-inch tile once ran, over the objections of the owners of the property. Defendants point only to the language of the statute and provide little analysis and no additional legal support for their claim that the statute helps them defend their

claims. To the extent Defendants had other arguments to make on this point, they did not do so, and those arguments are waived. Plaintiffs' Motion for Summary Judgment on this issue is granted.

**3) Defendants may proceed on the affirmative defenses of estoppel and consent.**

In Defendants' Response brief, they cite the Amended Reclamation Plan signed on April 30, 2017, stating at one point that the "work done on the drainage solution on what Plaintiffs refer to as the 'farm tract'" is work that "was outlined in the amended reclamation plan." ECF No. 268 at 12. The Amended Reclamation Plan includes requirements and milestone dates for completing reclamation on the Mining Tract. That Plan states that Scharf must "resolve the violation regarding the trench that was installed from the lake to the Kickapoo Creek." ECF No. 251-24. Defendants argue that Plaintiffs acquiesced to the Amended Reclamation Plan, essentially giving consent to work on their land.

Defendants further argue that for thirteen years William Price did not object to where the work took place and William had long been aware of the drainage work being performed on the Farm Tract. Defendants further argue that the siblings were aware of the drainage work as early as June 7, 2007 and that the siblings gave written permission for work to continue under the Amended Reclamation Plan. Defendants argue that Theodosia and Brokaw then complained about the very drainage work that they approved. Plaintiffs counter that while they approved of reclamation work continuing, they did not approve of Defendants digging a trench on the Farm Tract without an engineered plan.

Thus, Defendants argue that there cannot be trespass when the person enters based on consent. Defendants further argue that habitual acquiescence may constitute a license for persons to enter land if the tolerance is so pronounced it amounts to permission. ECF No. 268 at 42. Accordingly, Defendants bring the affirmative defenses of consent and estoppel. Plaintiffs do

provide evidence that they repeatedly objected to Defendants continuing to work on the drain without an engineered plan. They stated in writing their preference that Scharf fill in the trench but suggested they may allow the work to continue if Defendants provided an engineered plan. However, the letters and emails that the Court reviewed do not capture the entire relationship between the parties, and Defendants point the Court to just enough evidence to survive this motion for summary judgment. Accordingly, Plaintiffs' motion on this point is denied.

### 4) Defendants' waiver argument is not well supported.

Defendants appear to argue that Scharf reached an agreement with William Price to conduct mining operations outside the boundaries of the permit parcel. Regardless of the veracity of that assertion, Defendants do not explain how this supports an argument that any of Plaintiffs' claims are waived. To the extent that Defendants assert there was a verbal agreement or otherwise consent, the Court has already determined that Defendants may proceed with its defense of consent. However, Defendants do not point to legal or factual support to support its assertion that any claims were waived. Accordingly, Plaintiffs' Motion for Summary Judgment on this issue is granted.

### 5) Plaintiffs were not required to exhaust administrative remedies.

Defendants also include failure to exhaust administrative remedies as an affirmative defense. In their response, Defendants again confuse the scope of the Court's previous ruling to argue that Plaintiffs have attempted to bypass the Court's ruling and collect damages under the Special Use Permit and Reclamation Plan. ECF No. 268 at 55. They argue that the only remedy left available for Plaintiffs was to pursue forfeiture of the reclamation bond. Defendants' response suggests that they do not, in fact, think the issue is failure to exhaust but that under no circumstance do Plaintiffs have a breach of contract claim due to failure to reclaim the land under the Permit.

As Plaintiffs point out, the statute that Defendants cite in support of this argument limits the "remedy" to the Attorney General as the only party who may bring bond forfeiture proceedings. 225 ILCS 715/11.

This case is about a private contract and there is no exhaustion requirement nor do Defendants even correctly identify a possible administrative remedy where Plaintiffs could seek relief. Therefore, Plaintiffs' Motion for Summary Judgment on this affirmative defense is granted.

### 6) Theodosia and Brokaw did not materially breach the Contract or violate the covenant of good faith and fair dealing.

The Court has already granted Theodosia and Brokaw Price's Motion for Summary Judgment on Defendants counterclaim against them for breach of contract. The same reasoning applies here to find that Defendants cannot support a counterclaim for breach of contract or violation of the covenant of good faith and fair dealing.

### 7) The Doctrine of Frustration of Purpose does not apply.

The doctrine of frustration "grows out of mutual mistakes as to material facts made when the contract is entered into, with the result being rescission of the contract.... Promises made that become impossible to fulfill call for rescission and restitution.'" *Sunshine Imp & Exp Corp. v. Luxury Car Concierge, Inc.*, 13 C 8925, 2015 WL 2193808, at *5 (N.D. Ill. May 7, 2015) (quoting 28 Williston on Contracts §70:167 (4th Ed.). "[U]nder Illinois law the defense is not to be applied liberally and the party seeking rescission must show that (1) the frustrating event was not reasonably foreseeable and (2) the value of counter performance has been totally or nearly totally destroyed by the frustrating event[.]" *United States v. Sw. Elec. Co-op., Inc.*, 869 F.2d 310, 315 (7th Cir. 1989) (citing *Northern Illinois Gas Co. v. Energy Co–Op, Inc.*, 461 N.E.2d 1049, 1069 (Ill. App. Ct. 1984)).

Defendants appear to argue that the parties were mistaken as to a material fact at the time of the Contract execution because William Price and CST could not "have foreseen two siblings eventually interfering with CST's very ability to access the property." ECF No. 268 at 47. Defendants continue that the actions by the siblings are "very frustrating and external events that were not reasonably foreseeable to two, quite reasonable, businessmen." *Id*. Defendants' personal feelings of frustration with Brokaw and Theodosia's actions nearly twenty years after the contract was entered into do not reflect a mutual mistake of material fact at the time the contract was entered. In fact, the Contract contains an article explicitly addressing this issue. The Contract is clear that "each obligation hereunder shall extend to and be binding upon, and every benefit shall inure to the heirs, executors, administrator, successors, or permitted assigns of the respective parties." ECF No. 83-1 at 17. The Contract continues that the "covenants, terms, and conditions of this Contract shall run with the land and be in all respects binding and operative upon hereto and all permitted assignees, sublessees and grantees." *Id.* It even states that Price may assign the interest in the Contract, subject to certain limitations, to any "third-party Seller, or any agent, intermediary, title company, trust, trustee, or any other entity." *Id*. Thus, that Defendants are now in a contract with the Prices' son was not only foreseeable, but Defendants specifically agreed to a provision the Contract runs with the land, Price could assign the interest to third-parties, and that each obligation should extend to heirs and executors.

Defendants have not presented any evidence that this event was not reasonably foreseeable. The provisions of the Contract confirm that it was foreseen, and the parties contracted to specifically allow this event. Courts are not to liberally apply this doctrine. Thus, Plaintiffs' Motion for Summary Judgment on the affirmative defense of frustration of purpose is granted.

**8) CST's purported substantial performance does not negate its reclamation obligation.**

Illinois courts apply the doctrine of substantial performance in cases where there is "an honest and faithful performance of the contract in its material and substantial parts, with no willful departure from, or omission of, the essential points of the contract." *Broncata v. Timbercrest Estates, Inc.*, 241 N.E.2d 569 (Ill. App. Ct. 1968). Generally, this doctrine is applied in the context of building contracts. *See e.g., Levan v. Richter,* 504 N.E.2d 1373 (Ill. App. Ct. 1987); *V & V Cement Contractors, Inc. v. La Salle Nat. Bank*, 456 N.E.2d 655 (Ill. App. Ct. 1983); *Watson Lumber Co. v. Guennewig,* 226 N.E.2d 270 (Ill. App. Ct. 1967). Illinois courts have explained that the purpose of this doctrine, in part, is that it is possible for a contractor to have not perfectly complied with the contract despite good faith effort and for the owner to have suffered no real damage due to this minor departure. *See Kangas v. Trust,* 441 N.E.2d 1271 (Ill. App. Ct. 1982) (explaining that in some cases, "the penalty and forfeiture, with no real damage to the owner, may be grossly disproportionate to the nature of the breach"); *Watson Lumber Co. v. Guennewig*, 226 N.E.2d 270 (5th Dist. 1967) (explaining that "labor and materials expended upon the owner's land could not be returned to the contractor if the owner avoided the contract. It was therefore held, and became the rule in Equity, that if the owner got substantially the thing for which he bargained, he must pay for it"). However, courts should "not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." *Thompson v. Gordon*, 241 Ill. 2d 428, 442, 948 N.E.2d 39, 47 (2011).

CST argues that it substantially performed under the contract, relieving it of its obligation to reclaim the Mining Tract. CST largely points to the royalties paid to William and Barbara Price. This doctrine of substantial performance excuses good faith, but immaterial non-compliance. Part of the purpose is that the owner has received very nearly what they had contracted to obtain but

despite good faith effort, the contractor did not strictly deliver. The doctrine of substantial performance is to prevent a situation where the contractor conferred a substantial benefit to the landowner and expended time and resources that he cannot get back but may not be entitled to payment due to minor imperfections. Here, reclaiming the land was an important part of the contract. CST is not claiming that there were minor flaws with their good faith effort at reclaiming but instead is suggesting that the substantial royalties may excuse its performance. This argument does not fit with the spirit of the rule or the Illinois Court's prior application of the doctrine. This interpretation would also nullify important provisions in the contract which the Illinois Supreme Court has cautioned courts not to do. The doctrine of substantial performance does not protect CST from not performing a provision of the contract that significantly impacts the value of the land simply because it paid the contractually owed royalties. This is not a matter of slight imperfection but failure to deliver on an important contractual provision. Accordingly, Plaintiffs' Motion for Summary Judgment on this issue is granted.

9) **Mitigation issues and the doctrine of impermissible betterment are appropriately reserved for trial.**

Defendants note that mitigation and the doctrine of impermissible betterment do not bar liability and are only applicable as to the issues of damages. Thus, Defendants' requests that the Court allow them to reserve arguments on the issue of appropriate damages until after liability is determined. The Court agrees that this issue need not be addressed now, before liability is even determined. Accordingly, Plaintiffs' motion for summary judgment on this issue is denied.

IV. **Plaintiffs' Motion for Summary Judgment on Count III of the Amended Complaint**

Plaintiffs have moved for summary judgment on Count III, Breach of Contract. They ask that the Court find CST breached its contract and leave only the matter of damages for the jury. As stated above, to establish a breach of contract under Illinois law, plaintiffs must establish "(1)

the existence of a contract between him and defendants, (2) his performance of his obligations under the contract, (3) defendants' failure to perform their obligations under the contract, and (4) damages resulting from the breach." *See Walker v. Ridgeview Construction Co.,* 736 N.E.2d 1184, 1187 (Ill. App. Ct. 2000).

Here, a contract exists and there is little dispute the land has not been fully reclaimed. Plaintiffs point to a great deal of evidence that the work performed on the Farm Tract was actually destructive and without their permission. Plaintiffs have also otherwise presented strong evidence of a breach of contract. Defendants have, however, at least pointed to some evidence that the drainage trench was part of valid reclamation work and that they had prior permission or otherwise had the right to complete the work. Defendants also claim that Plaintiffs unreasonably withheld permission to enter the abutting Farm Tract to complete the necessary drainage work. While it appears Defendants will have an uphill battle at trial, the Court does not believe there is no factual dispute for the jury. Accordingly, Plaintiffs' Motion for Summary Judgment on this claim is denied.

## CONCLUSION

For the reasons stated above, it is ORDERED as follows:

1) Defendants' Motion for Summary Judgment [264] is DENIED;

2) Plaintiffs' Motion for Summary Judgment [263] is GRANTED as to Defendants' counter/third-party claims; and on the affirmative defenses as set out in the opinion, and DENIED in all other respects;

3) Counter Claimant's prior Motion for Summary Judgment [233] filed before Plaintiffs amended their Complaint is now MOOT;

4) Plaintiffs' prior Motion for Summary Judgment [236] filed before they amended their Complaint is now MOOT.

ENTERED this 4th day of January, 2023.

/s/ Michael M. Mihm

Michael M. Mihm
United States District Judge
