UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| WILLIAM BROKAW PRICE, SHARON PRICE, and WINDFALL PROPERTIES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CARRI SCHARF TRUCKING, INC., an Illinois Corporation, and JOSEPH A. SCHARF, and CARRI SCHARF MATERIALS COMPANY, an Illinois Corporation, <br><br> Defendants. | Case No. 19-1162 |

**OPINION AND ORDER**

Pending before the Court are Defendants Carri Scharf Trucking, Inc. ("CST"), Carri Scarf Materials Company ("CSM"), and Joseph A. Scharf's Motion for Reconsideration on Summary Judgment (the "Motion to Reconsider" or "Motion"). ECF No. 276. For the reasons stated below, the Motion to Reconsider is DENIED.

**BACKGROUND**

The parties are familiar with the background of this case, and the Court therefore only sets forth those facts directly relevant to the issue before it.

**I.      Factual Background**

This dispute stems from a contract initially entered into between Plaintiff William Brokaw Price's parents, William and Barbara Price, and CST on or about January 7, 1997 ("the Contract"). The Contract granted CST the exclusive right to mining operations (a "gravel pit") on a sixty-acre portion of the Price's property, termed the "Mining Tract." The Contract ultimately granted CST

1

permission to extract and sell sand, gravel, and topsoil from the Mining Tract, and in exchange, the Prices received royalty payments. ECF No. 83-1 at 2.  In addition to the Mining Tract, the Prices owned a seventy-acre parcel abutting the Mining Tract, termed the "Farm Tract."

The Contract imposed several requirements on CST, including:  (i) to obtain a Special Use Permit from McLean County that allowed mining operations on agriculturally zoned property (the "Permit") and imposed certain reclamation requirements; (ii) to comply with all local, State, and Federal regulations or orders regarding the use of the premises; (iii) to remove all equipment and improvements, leave the lake with a certain shoreline, and distribute the remaining sand gravel or overburden over the premises upon termination of the Contract; and (iv) to comply with Price's reasonable plans and directions regarding the distribution of the left-over material.  *See* ECF No. 255 at 10; ECF No. 83-1 at 13.  The Contract was renewed on November 7, 2009, with its mining provisions expiring on June 1, 2010, and royalties remaining in effect until December 31, 2010.  ECF No. 264 at 13; ECF No. 269 at 4.  The Mining Tract and Farm Tract were also transferred, in a series of conveyance between 2003 and 2019, from William and Barbara Price to the William Brokaw Price Trust and the Barbara Scott Price Trust, and then from the trusts to Brokaw Price and his company (co-owned with Shannon Price), Windfall Properties, LLC.  ECF No. 264 at 26; ECF No. 269 at 12.

The issues before the Court stem from the completion of reclamation work and access to the adjoining Farm Tract.  Specifically, Plaintiffs accuse Defendants of failing to complete reclamation work after the gravel pit operations closed and allege that Defendants trespassed on the adjacent Farm Tract.  Plaintiffs also allege numerous issues with CST's work on the Mining Tract, which they claim lead to damage to the property and high costs to complete proper reclamation work.  In response, Defendants filed counterclaims against Brokaw Price and third-

party claims against Theodosia Price that alleged breach of contract and anticipatory breach of contract. The Defendants claim that Brokaw and Theodosia stopped them from properly performing their work on the Mining Tract by repeatedly ordering them off the land during the reclamation process and unreasonably withholding access to the adjoining Farm Tract. Defendants assert this resulted in damages from employment and equipment costs.

## II.    Procedural History

The parties are currently operating under the Third Amended Complaint, which alleges claims from trespass, conversion, and breach of contract. ECF No. 80. Defendants filed counter/third-party claims for breach of contract and anticipatory breach and raised numerous affirmative defenses. The parties each filed competing motions for summary judgment on the claims and counterclaims. *See* ECF Nos. 263, 264. On January 4, 2023, the Court issued its order and opinion denying the Defendants' motion for summary judgment, granting the Plaintiff's motion for summary judgment as to Defendant's counter/third-party claims and on affirmative defenses, and setting the remaining issues for trial on September 20, 2023 (the "MSJ Order"). ECF No. 273; 8/15/23 Text Order (setting trial date). At issue here, the MSJ Order rejected Defendants' counter/third-party claims that the Plaintiffs' breached the Contract by refusing to accept reclamation work and access to the Farm Tract.

On August 16, 2023, the Defendants filed the Motion for Reconsideration. ECF No. 276. The Motion requests that the Court reconsider the Defendants' counter/third-party claims for breach of contract and anticipatory breach due to a change in controlling law since the Court decided the issue. Specifically, Defendants assert that the Illinois Supreme Court's adoption of the "partial breach doctrine" in its *PML Dev. LLC* decision requires this Court to reach a different result because the Plaintiffs failed to repudiate the Contract and chose to continue accepting performance of the reclamation work. *See PML Dev. LLC v. Village of Hawthorn Woods*, 2023

IL 128770 (Ill. June 15, 2023). Plaintiffs contest the Motion to Reconsider on the grounds that the Motion is late filed, that *PML Dev. LLC* is not a change in controlling law, and even if it was, its holding should not change this Court's prior ruling. ECF No. 278. The Court addresses each of these arguments below.

## LEGAL STANDARD

A court may alter or amend final orders and judgments under Federal Rule of Civil Procedure 59(e). Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). An order granting summary judgment in part, however, is not a final judgment; instead, an order that partially grants summary judgment but leaves final resolution of the issues for trial is merely a partial judgment that does not become final until the underlying claims are fully resolved. *See, e.g.*, *Miller v. Turner*, 2000 WL 279668 (7th Cir. Mar. 13, 2000) (noting that notwithstanding partial grant of summary judgment, a decision is not final until all claims are decided).

Federal Rule of Civil Procedure 54(b) provides district courts with inherent power to reconsider non-final orders before entry of final judgment. *See, e.g.*, *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983); *Sims v. EGA Prods. Inc.*, 475 F.3d 865, 870 (7th Cir. 2007). Rule 54(b) provides, in pertinent part, that an order adjudicating "fewer than all claims or the rights and liabilities of fewer than all parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Unlike Rule 59(e), Rule 54(b) does not impose a time requirement of twenty-eight days, although the Seventh Circuit has held that such motions generally must be filed no more than thirty days after the partial judgment to which they relate. *See King v. Newbold*, 845 F.3d 866, 868 (7th

Cir. 2017). In "extremely rare" circumstances, however, courts may grant an exception if the late filing is not due to neglect or if the general rule should be abrogated in the interest of justice. *Id.*

A motion to reconsider may be appropriate in circumstances where: (i) the court has patently misunderstood a party; (ii) the court has made a decision outside the adversarial issues presented to the court; (iii) the court has made an error not of reasoning, but of apprehension; (iv) there has been a controlling or significant change of law since the submission of the issue to the court; or (v) there has been a controlling or significant change in the facts since the submission of the issue to the court. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1192 (7th Cir. 1990). "Motions for reconsideration serve a limited function." *Caisse Nationale de Credit v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (citations omitted). The party moving for reconsideration has a heavy burden. *Id.* at 1270. Appropriate issues for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191. It is not appropriate to use a motion to reconsider to relitigate arguments the Court previously rejected or that should have been raised at an earlier juncture. *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007).

## DISCUSSION

As a preliminary matter, the Court finds Defendants' Motion for Reconsideration is not time barred. Defendants point to a sound reason for the delay, as the Illinois Supreme Court's *PML Dev. LLC* decision was not decided until June 15, 2023, which is well after the close the of the motion for summary judgment briefing and the Court's MSJ Order. Defendants therefore could not have utilized *PML Dev. LLC* at the motion for summary judgment stage. Additionally, Defendants filed the Motion to Reconsider in advance of the pre-trial conference and trial date, giving the Court sufficient time to reconsider the issues before final resolution.

Turning to the underlying merits of the Motion, the Court will first determine whether the Motion to Reconsider raises a change of controlling law that could not have been raised in the earlier Motion for Summary Judgement briefing. If the Court finds that it does, it must then determine whether the change in controlling law requires the Court to alter the relevant portions of its MSJ Order.

I. **Defendants' Properly Assert a Change in Controlling Law.**

The Court is not persuaded, as Plaintiffs contend, that *PML Dev. LLC* does not represent a "change in controlling law" for purposes of a Motion to Reconsider. The Court in *PML Dev. LLC* "explicitly adopted the partial breach doctrine" to the extent it had not formally done so in prior precedent. *PML Dev. LLC*, 2023 IL 128770, at *9. While the Illinois Supreme Court in *PML Dev. LLC* notes that certain principles of the partial breach doctrine are rooted in Illinois law, that Court ultimately found reason to expressly adopt the doctrine in a case of first impression. Thus, regardless of whether the doctrine was previously illustrated in Illinois law, this Court finds that such express adoption satisfies a change in controlling law for purposes of the Motion to Reconsider.

II. **Defendants Have not Demonstrated that the Change in Controlling Law Requires a Different Result.**

Defendants contend that the adoption of the "partial breach doctrine" under Illinois law presents genuine issues of material fact as to whether the Counter Defendants/Third-Party Defendant materially breached the contract, as well as genuine issues of material facts as to what, if any, acts or omissions constituted a material breach. ECF No. 276, at 5–6. Specifically, Defendants argue that while this Court previously found that CST had not performed its obligations under the Contract, the Court did not analyze whether the siblings took steps to repudiate the contract as described in *PML Dev. LLC*. ECF No. 276 at 5.

In *PML Dev. LLC*, the Illinois Supreme Court explicitly adopted the "partial breach doctrine" to determine contractual liability between the Plaintiff, PML Development LLC ("PML") and the Defendant, the Village of Hawthorn Woods (the "Village"). *PML Dev. LLC*, 2023 IL 128770, at *1. There, the Illinois Supreme Court first underscored the "unique scenario presented in this case, *where both parties materially breached a contract* but there is a question as to whether each party elected to continue performing despite the breach." *Id.* (emphasis added). The Court importantly noted that the partial breach doctrine serves as "an exception to the first-to-breach rule" which "applies where an injured party elects to continue performing under the contract despite the other party's material breach." *Id.* at *9. The Court reasoned that when an injured party faces a material breach, it must either continue to accept performance—and therefore is bound to its obligations under the contract—or it may repudiate the contract. *Id.* The Court described this decision as a "fork in the road" because the injured party remains bound to its contractual obligations, in the event it accepts continued performance, notwithstanding the other party's first material breach. The *PML Dev. LLC* Court ultimately held that under the facts before it, both parties continued to perform despite the other's breach, and therefore, both parties retained a viable claim for breach of contract. *Id.* at *8.

Defendants assert that under *PML Dev. LLC*, the Plaintiffs were required to repudiate performance upon Defendants' material breach at various points in time. Defendants contend that because Plaintiffs continued to accept performance—particularly at the 2010 juncture prior to issuing a cease-and-desist letter in 2016—they are liable for breach of contract counter/third-party claims. Defendants, however, do not correctly apply the holding in *PML Dev. LLC* to our prior MSJ Opinion.

7

While *PML Dev. LLC* expressly adopts the partial breach doctrine, the doctrine does not require a different result in the MSJ Order. In the MSJ Order, this Court held that Plaintiffs did not breach the Contract, in part, because Plaintiffs had no contractual duty or obligation to let the Defendants utilize the Farm Tract. The Court specifically rejected Defendants' arguments that they were entitled to access the Farm Tract, and that failure to grant permission to enter the Farm Tract constituted a breach of any duty for the Plaintiffs. ECF No. 273, at 16–17. These findings are relevant because the partial breach doctrine—as an exception to the first-to-breach rule—only applies in circumstances where both parties have materially breached an agreement, and the injured party owes continued contractual duties if it continues to accept performance notwithstanding the breach. *See PML Dev. LLC*, 2023 IL 128770, at *11 (noting that trial court found that both PML and the Village continued to perform despite the fact that both parties had materially breached the agreement).

Here, the Court found that the Plaintiffs had no duty to allow the Defendants onto the Farm Tract, and therefore, had no continued obligations that would make them liable for breach of contract in the event they failed to repudiate. Had the Court found that the Plaintiffs *also* breached the Contract by not allowing the Defendants onto the Farm Tract or by failing to accept reclamation work, but such breach was excused because Defendants breached first, the partial breach doctrine would potentially warrant a different result because it would require the Plaintiffs to repudiate or risk owing continuing obligations under the Contract. The Court, however, simply found that Plaintiffs did not breach the Contract when they denied Defendants access to the Farm Tract and completion of the reclamation process. ECF No. 273, at 16–17. Therefore, this is not an instance, as in *PML Dev. LLC*, where the Plaintiff was also in material breach and the partial breach doctrine was implicated to determine whether both parties retained viable claims.

## CONCLUSION

For the reasons stated above, the Defendants' Motion to Reconsider is DENIED.

ENTERED this 14th day of September, 2023.

> /s/ Michael M. Mihm
> Michael M. Mihm
> United States District Judge