UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| WILLIAM BROKAW PRICE, SHARON PRICE, and WINDFALL PROPERTIES, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>CARRI SCHARF TRUCKING, INC., an Illinois Corporation, and JOSEPH A. SCHARF, and CARRI SCHARF MATERIALS COMPANY, an Illinois Corporation,<br><br>    Defendants. | Case No. 19-cv-1162 |

**OPINION AND ORDER**

Pending before the Court are Plaintiffs' Motion *in Limine* (ECF No. 284) and Plaintiffs' Motion to Substitute Correct Statement of Damages in Proposed Pretrial Order (ECF No. 315). For the reasons stated below, the Motion *in Limine* and the Motion to Substitute Corrected Statement of Damages are GRANTED.

**BACKGROUND**

The parties are familiar with the background of this case, and the Court therefore only sets forth those facts directly relevant to the issue before it. The parties are currently operating under the Third Amended Complaint, which alleges claims for trespass, conversion, and breach of contract. ECF No. 80.[1] On January 4, 2023, the Court issued its order and opinion denying the Defendants' motion for summary judgment and granting the Plaintiffs' motion for summary judgment, in part, as to Defendant's counter/third-party claims and on affirmative defenses

---

[1] At the Pre-Trial Conferences, the Plaintiff withdrew the conversion clam.

1

(the "MSJ Order").[2] ECF No. 273. The MSJ Order set the remaining issues for trial on September 27, 2023. The Court conducted two pre-trial conferences (the "Pre-Trial Conferences") on September 20, 2023 and September 25, 2023.

Prior to the Pre-Trial Conferences, the parties submitted numerous motions *in limine*. Relevant to this dispute, Plaintiffs' Motion *in Limine* sought to exclude two appraisal reports taken in 2018 that purported to show the value of the Farm Tract and Mining Tract (the "Appraisal Reports"). *See* ECF No. 284. Specifically, Plaintiffs objected to the Defendants use of the Appraisal Reports to show that the cost to restore the property, as required under the Contract, exceeds any diminution in value to the property. ECF No. 285 at 5. Defendants responded that diminution in value is a measure of damages that should be presented to the jury for both the breach of contract and trespass claims under Illinois law, and that the submitted Appraisal Reports provide "the only possible basis for value of the property existing for either party in the instant matter." ECF No. 294 at 15–16.

The parties also submitted a proposed pre-trial order (the "Proposed Pre-Trial Order") on September 14, 2023. ECF No. 301. Among other things, the Proposed Pre-Trial Order set forth the Plaintiffs' itemized damages summary, which asserted $1,217,271 in damages for breach of contract to the Mining Tract and parts of the Farm Tract, $485,816 in damages for trespass to the Farm Tract, and $40,652 in conversion damages. *Id.* at 13–14. On September 20, 2023, the Plaintiffs submitted a Motion to Substitute Corrected Statement of Damages in Proposed Pretrial Order (the "Motion to Substitute Corrected Damages") prior to the conclusion of the Pre-Trial Conferences. ECF No. 315.

---

[2] Definitions used but not defined herein have the meaning ascribed to them in the Court's MSJ Order.

In the Motion to Substitute Corrected Damages, Plaintiffs sought to include a new category of damages of $525,770 for breach of contract damages related solely to the Farm Tract, and reduce the trespass damages from $485,816 to $53,449, while maintaining the $1,217,271 in breach of contract damages to the Mining Tracts and Parts of the Farm Tract. On September 22, 2023, Defendants filed the Motion to Strike "Corrected" Damages (the "Motion to Strike"), asserting that the Plaintiffs' reallocation of damages from trespass to breach of contract was, in effect, an entirely new claim for breach of contract that related solely to the Farm Tract and had not been raised during the course of the litigation. ECF No. 320. Defendants further argued that the Plaintiffs' Motion to Substitute was prejudicial because it was filed on the eve of trial. *Id.* Defendants also argued that the reallocation of damages from trespass to breach of contract left the Plaintiffs with a trespass claim for $53,449 that no longer satisfied the amount-in-controversy requirements under 28 U.S.C. § 1332. *Id.*

At the Pre-Trial Conferences, the Court heard arguments from the parties on the correct measure of damages. At the final Pre-Trial Conference on September 25, 2023, the Court GRANTED Plaintiffs' Motion *in Limine* seeking to preclude evidence of diminution in value on the basis that cost of repair was the proper measure of damages. The Court also GRANTED the Plaintiffs' Motion to Substitute Corrected Damages. (*Min Entry* 9/25/23). The Court further provided that it would issue a written order memorializing its ruling.

## LEGAL STANDARD

The power to exclude evidence, pursuant to motions *in limine*, arises out of the Court's inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41, n.4 (1984). District courts have "broad discretion in ruling on evidentiary questions during trial or before on motions *in limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The moving party has the burden of demonstrating that the evidence is inadmissible on any relevant ground.

3

*Plair v. E.J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994). Additionally, the decision to grant or deny a motion to strike is within the discretion of the district court. *McCormick v. Prudential Ins. Co. of Am.*, No. 10-cv-3107, 2010 WL 3834539, at *3 (C.D. Ill. Sept. 14, 2010) (citing *Delta Consulting Group, Inc. v. R. Randle Construction, Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009)).

## DISCUSSION

At the Pre-Trial Conferences, the parties raised a number of issues regarding the correct legal standard for damages. The Court noted that it was highly unusual for the parties to have delayed raising purely legal issues until the eve of trial but allowed the parties an opportunity to argue their respective positions. Below addresses the Court's rulings with respect to the appropriate measure of damages for the Plaintiffs' breach of contract and trespass claims, and the Plaintiffs' corrected itemized statement of damages sought to be included in the Proposed Pre-Trial Order.

### I. Breach of Contract Damages

At trial, Defendants sought to introduce certain Appraisal Reports as evidence of diminution in value to Plaintiffs' property, and as a comparison to the costs of completing the reclamation work. Plaintiffs sought to preclude such evidence in their Motion *in Limine*, arguing that the correct standard of damages was cost of completion, and that even if it were not, that the Appraisal Reports did not adequately demonstrate a diminution in value because they were created in 2018 for use in unrelated probate proceedings. In response, Defendants acknowledged that both parties had failed to properly frame damages throughout the case; nevertheless, Defendants argued that diminution in value is the correct legal standard that should be used at trial.

Illinois law provides that the general measure of damages for a breach of contract is the cost of completion—*i.e.*, expectation damages. *See Wash. Courte Condominium Assoc.-Four v.*

4

*Wash.-Golf Corp.*, 267 Ill. App. 3d 790, 820 (Ill. App. Ct. 1994) (providing that it is well-settled that where less than full performance has been delivered, the correct amount of damage sis the cost of completion or correcting the defective condition). However, Illinois courts have allowed the use of diminution in value damages where correcting defects or full completion (often in construction cases) would entail "unreasonable destruction" of work already performed or be corrected at a cost that is unreasonably disproportionate to the benefit to the owner. *See, e.g.*, *Park v. Sohn*, 89 Ill. 2d 453, 464–65 (Ill. 1982); *Wells v. Minor*, 219 Ill. App. 3d 32, 40 (Ill App. Ct. 1991) (same).

Illinois courts have also utilized diminution in value as a potential measure of damages for injuries to real property that result from the breach of a lease agreement, contract, or asset purchase agreement. *See, e.g.*, *BP Amoco Chem. Co.*, 697 F. Supp. 2d 1001, 1032 (N.D. Ill. 2010) (applying diminution in value to breach of asset purchase agreement); *Bowes v. Saks & Co.*, 397 F.3d 113 (7th Cir. 1968) (applying in diminution in value to lease agreement). These courts utilize a similar test to the above construction cases, analyzing whether an injury to real property is repairable in a practicable manner (warranting cost of completion) or whether the real property is destroyed in a manner that renders repair impracticable (warranting diminution in value). *See Williams–Bowman Rubber Co. v. Indus. Maint., Welding & Machining Co.*, 677 F. Supp. 539, 541 (N.D. Ill. 1987) (formulating test). Like the construction cases, whether an injury is "repairable" hinges on whether the repairs would put the defendant to disproportionate expense in restoring the property to its pre-injury condition.[3] *See, e.g.*, *Jentz v. ConAgra Foods, Inc.*, 2013 WL 498727, at *6–8 (S.D. Ill.

---

[3] The Court has previously declined to label the parties' Contract as a "construction" contract in its summary judgment order, finding that the Defendants had waived this argument in their briefing. ECF No. 274 at 20. Nevertheless, while most often applied in that context, Illinois case law does not appear to require a direct determination that a contract be a "construction" contract to warrant diminution in value as a measure of damages and has seemingly applied diminution in value to cases outside construction defect cases. This distinction is therefore irrelevant for purposes of this Order.

5

Feb. 8, 2013), *rev'd on other grounds*, 767 F.3d 688 (7th Cir. 2014); *Meade v. Kubinski*, 277 Ill. App. 3d 1014, 1183–84 (Ill. App. Ct. 1996).

Additionally, the test has been applied in this Circuit. In *Bowes v. Saks & Co.*, the Seventh Circuit held that a lessor was not entitled to the cost of restoration following the expiration of a lease, in part, because the expense of restoration far exceeded the diminution in property caused by the lessee's nonperformance. 341 F.2d at 644. The Seventh Circuit reasoned that because the lessor had sold the property following the lease—and suffered $0.00 in diminution in value—receiving the costs of restoring the premises to its original condition would provide the lessor with a windfall and result in injustice. *Id.*

Here, the Court has already found that the reclamation work was a key component of the parties' agreement. ECF No. 273 at 29. Specifically, the Court noted that the alleged breach of contract from the failure to complete the reclamation work was "not a matter of slight imperfection, but failure to deliver an important contractual provision." *Id.* More importantly, the reclamation work was subject to significant governmental and regulatory oversight. McLean County, Illinois ("McLean County") issued a Special Use Permit, which set forth certain requirements for the mining operations on the Price's land, including a reclamation process that would restore the land to its original condition after the mining work was completed. McLean County also issued an independent reclamation plan that outlined reclamation work on the property and was subject to continued oversight. The Illinois Department of Natural Resources (the "IDNR") was also involved through the issuance of Statewide Permit #7, which contemplated certain drainage work necessary to restore the property.

These regulatory requirements were incorporated into the terms of the Contract, which provided that the that Defendants must comply with "all local, state or Federal regulations or orders

with respect to the use of the premises," and further, that "failure to comply with any said laws, [or] regulations . . . shall constitute a default hereunder." ECF No. 83-1 at 10. Further, in its MSJ Order, the Court found that a breach of the reclamation requirements of the Special Use Permit or Amended Reclamation Plan issued by McLean County can constitute a breach of the parties' Contract. ECF No. 273 at 14–15. Notably, here both parties' have complex and intertwined obligations to comply with the regulatory mandates, as the Defendants were required to post a reclamation bond, the Contract contained an indemnification provision, and the Plaintiffs were subject to continued responsibility for the completion of the reclamation work as owners of the property. Even at present, compliance with the regulatory requirements continues to be a key source of disagreement between the parties, as they dispute whether the Defendants' work complied with the Special Use Permit, the Amended Reclamation Plan, and the Statewide Permit #7.

Due to the significant regulatory involvement and oversight, the Court finds that this case is not an appropriate one for diminution in value damages. As an initial matter, trial courts have significant discretion in determining the proper measure of damages under a contract. *See Meade v. Kubinski*, 277 Ill. App. 3d 1014, 1018, 661 N.E.2d 1178, 1182 (Ill. App. Ct. 1996) (reasoning that questions of damages are at the discretion of the trial court). Importantly, the key principle behind the use of diminution in value is to prevent windfall recoveries and avoid "economic waste." *See Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 861 (Ill. App. Ct. 1994) (internal citations omitted).

Here, Defendants contend that the cost of completing the reclamation may exceed the value of the properties, and therefore, Plaintiffs' should only be entitled to an award of diminution in value to avoid a windfall recovery. Yet this is not a case where Plaintiffs may recover the cost of

completion and simply choose to forego the reclamation work. As noted above, the reclamation work is mandated by both McLean County and the IDNR, who oversee compliance with their respective permits. The owners of the property therefore must complete the reclamation regardless of what they receive from their contractual dispute with the Defendants. This is an important distinction from the series of case law allowing diminution in value, which has generally compared the value of the property to the cost of completion in cases where the completion is purely contractual, not regulatorily provided.

For example, in *Bowes v. Saks & Co.* the Seventh Circuit provided that the correct measure of damages was diminution in value because the cost to restore the property was only required under the terms of the lease, and the landowner was able to forgo the restoration and sell the property without a loss. 397 F.2d at 117 (reasoning the facts showed that the lessors suffered no damage as a result of a failure to restore the premises and that the "cost of repair damages would be wholly unrelated to the loss, which does not exist"). Similarly, in *Youngs v. Old Ben Coal Co.*, the Seventh Circuit held that diminution in value was the proper measure of damages when a lessee failed to restore certain oil wells to their prior working condition, in violation of the contract. 243 F.3d at 392–93. That case, however, turned on the fact that failure to restore the oil wells left the landowner with no loss in value because there was no oil left in the ground to be obtained from working wells. *Id.* (reasoning that the "[b]reach of a duty to restore the wells to their mint operating condition would impose no loss on the owner of the oil and gas estate in the land (Youngs), because there is no oil left in the ground and so no value to be obtained from oil wells."). As a result, awarding the cost of completion would have resulted in a total windfall.

In contrast, this case involves significant government oversight and mandated reclamation work, which must be completed at significant costs. To allow Plaintiffs to receive only diminution

8

in value of the property without the completed reclamation work would shift the bargained-for cost of reclamation from the Defendants to the Plaintiffs.[4] Such a result would leave Plaintiffs with significant costs of completion, higher industrial-use taxes, and may even compel a sale of the Plaintiffs' land in the event they cannot afford the government-mandated repairs. Thus, the Court finds this is not a case where the cost of completion would result in a windfall to the Plaintiffs that warrants departing from the general rule that a contracting party is entitled to the cost of completing the work; specifically, when the cost of the work was bargained-for and must be completed under regulatory permits.

## II.    Trespass Damages

In addition to breach of contract damages, Plaintiff William Brokaw Price also asserts that cost of completion is the correct measure of damages for his trespass claim. Illinois law uses a seemingly identical test to that discussed above for injuries to real property in tort. If real property is "partially" injured and the injury may be repaired in a practicable manner, then the measure of damages is the cost of repairing the property; however, if the real property is totally destroyed or damaged in a manner which renders repair impracticable, then the diminution in value rule applies. *First Baptist Church of Lombard v. Toll Highway Auth.* 301 Ill. App. 3d 533, 545 (Ill. App. Ct. 1998) (citing *Williams-Bowman Rubber Co.*, 677 F. Supp. at 545). Again, whether an injury is impracticable to repair depends on whether it imposes disproportionate expense or effort on the defendant to restore the real property to its prior condition. *Williams-Bowman Rubber Co.*, 677 F. Supp. at 545 n.6.

---

[4] Notwithstanding its holding, the Court acknowledges Defendants' arguments that they have tried to complete the reclamation work to comply with the regulatory permits but have been stopped by Plaintiffs on numerous occasions. The Court also recognizes that there is significant disagreement as to what work constituted sufficient reclamation under the permits. As noted in the MSJ Order, at trial, the Court will allow Defendants to raise issues of mitigation, estoppel, and reliance to counter any costs of completion that Plaintiffs may raise in their measure of damages.

Here, unlike the breach of contract claims, diminution in value may be an appropriate measure of damages for the trespass claim and should be left to the factfinders. The trespass claims do not involve the same complex entanglement of contractual and regulatory obligations as the breach of contract claims—which expressly provided for the reclamation work and incorporated the government permits and reclamation plan. Instead, the trespass claims stem from a narrower series of events where Defendants entered the Farm Tract in an effort to complete the reclamation work, and allegedly returned after being told to vacate the property. Therefore, the cost to repair the land from any damage that resulted from the trespass may be appropriately weighed against the value of the land. Because the Plaintiff presented no evidence on the value of the property, the Court finds appropriate that the Plaintiff may only assert nominal damages on his claim. *See Glen Ellyn Pharmacy, Inc. v. Kloudscript, Inc.*, No. 19-cv-2829, 2019 WL 6467319 at *3 (N.D. Ill. Dec. 2, 2019) (noting that "a court can award nominal damages for intentionally tortious conduct").

### III.     Substituted & Corrected Pre-Trial Damages

The parties also dispute whether the Plaintiffs may substitute a corrected statement of itemized damages in the Proposed Pre-Trial Order, prior to its entry, or whether the corrected damages constitutes a new claim that is prejudicial at this stage in the litigation and should be struck from the record. *See* ECF No. 315 (Motion to Substitute Corrected Damages); ECF No. 320 (Motion to Strike). District courts have "broad discretion over pretrial discovery rulings," which include decisions to receive or bar evidence at trial or to modify a pretrial order. *See Spiegla v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004); *see also Hotaling v. Chubb Sovereign Life Ins. Co.*, 241 F.3d 572, 578 (7th Cir. 2001). Additionally, "[m]otions to strike are disfavored and generally are granted sparingly when justice requires." *McCormick v. Prudential Ins. Co. of Am.*, No. 10-cv-3107, 2010 WL 3834539, at *3 (C.D. Ill. Sept. 14, 2010) (citing *Marshall v. H & R Block Tax Services, Inc.*, 2010 WL 3118678, at * 1 (S.D. Ill. 2010)). Like motions *in limine*, "[w]hether to

10

grant a motion to strike is within the discretion of the Court." *Id.* (citing *Delta Consulting Group, Inc. v. R. Randle Construction, Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009)).

Here, Plaintiffs sought to substitute an itemized statement of damages in the Proposed Pre-Trial Order prior to Court approval at the final day of the Pre-Trial Conferences. ECF No. 315. The Motion to Substitute Corrected Damages reallocated damages that were previously earmarked as trespass damages to a separate damage itemization for $525,660 for "Farm-Tract Breach of Contract Damages." The change reduced the amount of the trespass claim from $485,816 to $53,449, and carried over many of the same damages to the new "Farm-Tract Breach of Contract Damages" itemization, such as vegetation removal, grading and site preparation, removal of concrete, topsoil placement and grading costs, fertilizing costs, earth embankment costs, erosion control, and silt fence. The total damages ultimately rose from $1,743,739 to $1,837,032 as a result of the substitution. Defendants moved to strike the corrected damages on the grounds that the substitution was not an "error" but instead an attempt to assert a new breach of contract claim on the eve of trial. ECF No. 320. Defendants argued that this claim was not supported by the pleadings and was unduly prejudicial at this juncture. Defendants also argued that the reallocation from trespass to breach of contract left the trespass claim deficient under the amount-in-controversy requirement. *Id.*; *see also* 28 U.S.C. § 1332.

As an initial matter, the Court is not persuaded that the Plaintiffs' Motion to Substitute Corrected Damages was submitted too late in the course of this litigation. At all stages of this case, the parties have reserved the issues of damages for trial, as evidenced by the Court adjudicating purely legal issues on the appropriate measure of damages just days before trial. Upon review, the precise amount of damages was always preserved for trial. Both the Second and Third Amended Complaints provided that the exact amount of damages for each claim would be

determined at trial. *See* ECF Nos. 80, 254. Additionally, at the summary judgment stage, Plaintiffs requested that the Court allow a jury to determine the appropriate measure of damages (ECF No. 234 at 2), and Defendants requested that the Court allow them to reserve arguments on the issue of appropriate damages until after liability was determined (ECF No. 294 at 29). Therefore, the Court does not agree that the issues of damages can change on the "eve" of trial when the parties waited until trial to determine damages.

Additionally, the Court is not persuaded that the Plaintiffs' Motion to Substitute Corrected Damages asserts an entirely new claim that is outside the scope of the pleadings. While Defendants are correct that the damage to the West Portion of the Farm Tract was primarily brought as a trespass claim, Plaintiffs' breach of contract claim also alluded to such damages. Specifically, both the Second Amended Complaint and the Third Amended Complaint asserted claims for "[b]reach by failing to restore or reclaim land, as well as the East and *West Portions of the Farm Tract* impacted by CST's mining activities, in that it has not restored the land's original grade level and installed suitable topsoil, nor has it revegetated the disturbed areas to their original condition." ECF No. 83 ¶ 83; ECF No 254 ¶ 83. Plaintiffs have at all times asserted damages for the property surrounding the Mining Tract that stemmed from the reclamation work, regardless of whether Defendants had a right to enter the property under the Contract. Further, Plaintiffs' descriptions of damage to topsoil and vegetation in the Complaints are similar to those listed in the Plaintiffs' Motion to Substitute Corrected Damages.

To assert the substituted damages, Plaintiffs do not rely on new evidence, expert reports, or discovery that was unavailable to the Defendants prior to trial; instead, they merely changed calculations at the pre-trial stage. *See Structural Polymer Grp., Ltd. v. Zoltek Corp.*, 543 F.3d 987, 999 (8th Cir. 2008) (holding that substituted damages formula was not prejudicial because the

underlying information was available to defendant throughout the case); *Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 343 (8th Cir. 1979) (affirming district court's decision to allow corrected damages four days before trial because documents upon which damages were calculated were available to defendant before trial). Nor do Plaintiffs seek to add new damages that are far greater than those initially itemized or provided in the expert reports. *NeuroGrafix v. Brainlab, Inc.*, No. 12 C 6075, 2021 WL 1057312, at *4–5 (N.D. Ill. Mar. 18, 2021) (rejecting new damages calculation that raised royalty damage computation from $310,000 to $317 million on the eve of trial). In fact, as Defendants note in their briefing, Plaintiffs' new damage calculation rose its total from $1,743,739 to $1,837,032—a number that fit squarely within their expert report estimates of $1,796,386 from Keith Plavec and $1,938,684 from Jeffrey Miller. ECF No. 320 at 10. Thus, the Court finds that the corrected damages are not an entirely new claim or an amount that warrants the extreme relief embodied in a motion to strike.

Finally, the Court is not persuaded that the corrected trespass claim of $53,449 is now invalid under the amount-in-controversy requirement for diversity jurisdiction. 28 U.S.C. § 1332(a) (requiring that a civil action between citizens of different States must exceed the sum or value of $75,000, exclusive of interest and costs). First, "[t]he diversity statute confers federal jurisdiction over '*civil actions*' satisfying the required minimum amount in controversy, 28 U.S.C. § 1332(a); it does not assert jurisdiction over specific counts. Plaintiffs, therefore, are permitted to aggregate the stakes in separate claims or counts to meet the statutory requirements. *See Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121 (7th Cir. 1998); *Holmes v. Boehringer Ingelheim Pharms., Inc.*, 158 F. Supp. 2d 866, 868 (N.D. Ill. 2001). Here, William Brokaw Price asserts a trespass claim for $53,449 against each of the Defendants in addition to breach of contract claims for $1,217,271 and $525,660. Taken together against each defendant, jointly and severally,

the claims far exceed the jurisdictional amount. Further, Price does not seek impermissible aggregation, such as combining claims from other plaintiffs to meet the total amount for his civil action, as he also asserts the breach of contract claims. *See Travelers Prop. Cas. v. Good*, 689 F.3d 714, 717–18 (7th Cir. 2012) (providing that "[t]he general rule is that the claims of multiple litigants cannot be aggregated to reach the jurisdictional amount in controversy"). Thus, the Plaintiffs' reallocation of damages from trespass to breach of contract does not result in a loss of subject matter jurisdiction over the claims.

## CONCLUSION

For the reasons stated above, the Plaintiffs' Motion *in Limine* and Motion to Substitute Corrected Damages are GRANTED.

ENTERED this 1st day of November, 2023.

                                                /s/ Michael M. Mihm
                                                   Michael M. Mihm
                                            United States District Judge